**STATE of Minnesota,
Petitioner, Appellant,**

v.

**Todd Richard BENEDICT, Respondent.**

**No. C8–86–194.**

Supreme Court of Minnesota.

Dec. 12, 1986.

Hubert H. Humphrey, III, Rebecca Howes Hamblin, Crim. Div., St. Paul, John C. Hoffman, Mille Lacs Co. Atty., Milaca, for appellant.

Jerome D. Ciresi, St. Paul, for respondent.

AMDAHL, Chief Justice.

We granted the petition of the state for review of the decision of the Court of Appeals, 393 N.W.2d 36, granting defendant a new trial on sexual assault charges involving a young boy. The Court of Appeals reasoned that the trial court erred in refusing to grant a post-trial *Schwartz* hearing into the issue of juror misconduct and

that remanding for a *Schwartz* hearing now is impractical. *State v. Benedict,* 393 N.W.2d 36 (Minn.App.1986). We disagree with the court's conclusion that the trial court erred in refusing to grant a *Schwartz* hearing. We also have considered the other issues raised by defendant in his brief to the Court of Appeals, issues which, given its decision, the court chose not to address. Concluding that defendant received a fair trial and was properly convicted, we reverse the decision of the Court of Appeals and reinstate the judgment of conviction.

In May of 1982 the victim's family began renting a house owned by defendant's parents, who lived nearby. Defendant, who was then 20, living with his parents, and doing odd jobs, began playing with the victim, who was 5, and his two brothers, who were 6 and 8 at the time. The victim's father was an over-the-road trucker who was gone during the week, and the victim's mother began taking advantage of defendant's willingness to sit with the children while she went on errands. Defendant abused all three children but his abuse of the older boys was less serious, consisting of sexual contact through the clothing while playing and wrestling with the boys. The abuse of the youngest, the victim of the charged offenses, was more serious. Most of the abuse of the victim occurred when defendant was alone with the boy on the days that the boy did not have kindergarten. The abuse included defendant committing acts of fellatio upon the boy, putting ice inside the boy's rectum and then eating the ice, and kissing the boy. The brothers did not witness these incidents but did witness an incident in which defendant, while swimming in the river with the victim, forced the boy's head under water in an attempt to make the boy commit fellatio upon him. The brothers also witnessed defendant display his penis inappropriately on a number of occasions. Once in the summer of 1983 the victim complained to his mother that his penis was sore and inflamed and the mother treated it without investigating the cause. Later that summer the victim told a cousin about the abuse, she told the grandmother and the grandmother made the victim tell his mother. The mother was slow in reporting the matter to the authorities.

When defendant was arrested he told the arresting officer that something happened at the victim's place that was not right but that it also was not right to arrest him. Later, after being given a *Miranda* warning and asked if he wanted to talk about the incident, he said, "What if I did some of the things they said I did, but not the others?" In his testimony defendant denied the offense and called numerous character witnesses (mostly people he had worked for and people who were in his prayer group) who testified that he was honest and that they had never seen him do anything wrong with their children. However, some of these witnesses admitted that they were aware of an act of bestiality (sexual intercourse with a calf) by defendant.

■ 1. The issue of juror misconduct, the only issue addressed by the Court of Appeals, came to light after the trial when one of the jurors told her pastor that the jury foreman had said during deliberations that he had been abused by his brother as a child. Defense counsel moved for a *Schwartz* hearing, claiming that the foreman had lied on *voir dire* (of which there was no record) by not revealing this when asked a question intended to elicit the information. The prosecutor argued against a *Schwartz* hearing, stating that his recollection was the defense counsel did not ask the jurors the question that defense counsel recalled asking. The trial court initially was inclined to grant a *Schwartz* hearing, but then got defense counsel to agree to let him first look at counsel's *voir dire* notes and the affidavits to see if there was a basis for holding a *Schwartz* hearing and interrogating the jurors. The trial court denied the motion after doing this, but reconsidered the issue in its entirety when defendant hired a new attorney. In denying the motion for a new trial filed by defendant's new attorney, the trial court stated that its recollection was that at *voir dire* defense counsel had asked whether

the jurors had any prior experience with a sexual case and then added, without pausing, "any family members, any close friends?" The trial court concluded that defense counsel had not made a sufficient showing of the need for a *Schwartz* hearing to question the foreman or the others about whether anyone had lied at *voir dire.*

In *State v. Stofflet,* 281 N.W.2d 494 (Minn.1979), the issue was whether the trial court erred in refusing to conduct a *Schwartz* hearing to question one of the jurors about possible bias toward defense counsel because of a feud relating to defense counsel's management of an amateur hockey club. In affirming, we stated:

> In *Schwartz v. Mpls. Suburban Bus Co.,* 258 Minn. 325, 328, 104 N.W.2d 301, 303 (1960), we outlined procedures to be followed when a party seeks to impeach a verdict. Rule 26.03, subd. 19(6), Rules of Criminal Procedure, adopts the procedures outlined in *Schwartz.* This rule states:
>
> > "Affidavits of jurors shall not be received in evidence to impeach their verdict. If the defendant has reason to believe that the verdict is subject to impeachment, he shall move the court for a summary hearing. If the motion is granted the jurors shall be interrogated under oath and their testimony recorded."
>
> At common law the general rule in Minnesota was to disallow juror testimony or affidavits to impeach a verdict. There were exceptions, however, including "when there was some indication that a juror gave false answers on voir dire which concealed prejudice or bias toward one of the parties and thereby deprived that party of a fair trial." [Footnote omitted]. Note, 4 Wm. Mitchell L.Rev. 417, 432.
>
> The best argument in favor of a hearing is that such hearings should be liberally granted. *Olberg v. Minneapolis Gas Co.,* 291 Minn. 334, 343, 191 N.W.2d 418, 425 (1971). Since only one juror was involved, it probably would not have taken much of the court's time to hold such

a hearing. The focus of the examination would probably not have been on the deliberations of the jurors but on the particular juror's feelings about defense counsel and whether it was likely that those feelings, if negative, prejudiced defendant.

> Numerous decisions of this court have indicated, however, that the trial court exercises fairly broad discretion in determining whether to grant a *Schwartz* hearing. See, e.g., *Zimmerman v. Witte Transp. Co.,* 259 N.W.2d 260 (Minn. 1977). Here it was clearly within defense counsel's power to prevent the person in question from serving on the jury. In fact, he testified that when he first saw her at voir dire he thought he recognized her but could not quite place her. This being so, it would seem he had some obligation to interrogate her carefully to determine whether he had had prior contact with her. Also, to ensure preserving his right to challenge a juror's failure to answer a question accurately at voir dire, defense counsel should insist on the presence of the reporter. We have no record of the voir dire; defense counsel cannot even say for sure that he questioned the jurors about whether they knew him. The prosecutor testified that the only question asked was whether any of the jurors had done any business with defense counsel's law office. Under these circumstances—and since it is questionable whether a juror would penalize a defendant simply because of a bad prior experience with defense counsel—we conclude that the trial court did not abuse its discretion in refusing to grant the *Schwartz* hearing.

281 N.W.2d at 498, 499.

Subsequently, in *State v. Rachuy,* 349 N.W.2d 824 (Minn.1984), we upheld the trial court's refusal to hold a *Schwartz* hearing to examine allegations that a juror's son had been employed by the defendant and had been fired and that the juror was therefore biased against the defendant. Quoting extensively from *Stofflet,* we upheld the trial court's refusal to hold a *Schwartz* hearing because the defendant

had not made a sufficient preliminary showing that the juror had answered falsely at *voir dire*, of which there was no record, when asked if he knew the defendant.

We believe that in every criminal prosecution the trial court as a general matter ought to require the presence of a court reporter at *voir dire*. Defense counsel could have insisted on the presence of a reporter but did not do so. However, the trial court's independent recollection, supported by the recollection of the prosecutor and apparently not contradicted by an examination of defense counsel's *voir dire* notes, was that defense counsel did not ask the sort of clear question that, absent a lack of credibility on the juror's part, necessarily would have elicited the disclosure of the sort of information that the foreman withheld. This case is like *State v. Beer*, 367 N.W.2d 532 (Minn.1985), a rape case in which a juror alluded in deliberations to having been molested by an older relative years earlier. A *Schwartz* hearing was held in *Beer*, with the juror in question testifying that her uncle had put his hand on her knee when he was teaching her to drive, that she had told him to leave her alone and that that had ended the matter. She testified that she did not bring up the incident at *voir dire* because she thought that the trial court's questions related to rape. We upheld the denial of a new trial, stating that the post-trial questioning established that the juror's failure to reveal the incident was not indicative of deception because the trial court's question was limited to rape. We added that it was not even clear that the uncle had committed criminal sexual conduct because that offense requires penetration or touching of the intimate parts.

In summary, while the trial court certainly could have ordered a *Schwartz* hearing, we disagree with the conclusion that the trial court abused its discretion in refusing to do so. Defendant failed to make a sufficient showing that the juror in question lied. Indeed, the record that we have strongly suggests that he did not lie.[1]

2. Defendant's brief in the Court of Appeals raised a number of other issues. As we stated, because of its disposition of the appeal the Court of Appeals found it unnecessary to address these other issues. Of these other issues, the only one that we will address in any detail is the one raised by defendant's contention that the trial court improperly limited the defense's attempt to show that the allegations were fabricated.

The state's evidence included testimony by an expert that the victim exhibited an unusual knowledge of sexual activities for someone his age and that it was the result of the boy having been given an education by somebody. Defendant claims that the trial court improperly refused to let him

---

**1.** Even if we agreed that the trial court abused its discretion in refusing to conduct a *Schwartz* hearing, we would not agree with the Court of Appeals' decision to grant a new trial rather than remand for a *Schwartz* hearing. The Court of Appeals stated that holding a hearing at this late date is "impracticable" because some of the jurors may no longer be available for interrogation and because "the problem of memory loss makes such a hearing much less useful." 393 N.W.2d at 40. The fact that some of the jurors may not be available to be interrogated at a *Schwartz* hearing ordinarily should not prevent the holding of a fair *Schwartz* hearing. In *State v. Olkon*, 299 N.W.2d 89 (Minn.1980), *cert. denied*, 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981), we upheld the trial court's decision to call only six jurors at the *Schwartz* hearing. Here, were a *Schwartz* hearing necessary, it is probable that the trial court would learn as much from questioning nine or ten jurors as from questioning all 12 of them. As for the possibility of memory loss, that is always the case any time a *Schwartz* hearing is ordered by an appellate court. The logical import of the Court of Appeals' reliance on this possibility is that new trials rather than remands for *Schwartz* hearings ought always to be ordered when it is determined that it was error to refuse to hold a *Schwartz* hearing. In any event, we question the premise that the jurors in this case would not remember what happened. The decision to order a new trial rather than to remand for a hearing is also inconsistent with many cases of this court, the most recent one being *State v. Burns*, 394 N.W.2d 495, 497 (Minn. 1986), where we stated that "the award of a new trial is not necessary if some other lesser remedy, *e.g.*, the holding of a post-conviction evidentiary hearing, would be more appropriate."

show that the boy's knowledge came from his family, not from defendant, and that the trial court's refusal prevented him from effectively asserting the fabrication defense.

Minn.R.Evid. 404(c), as construed by this court, governs the admission of evidence of "the victim's previous sexual conduct" in prosecutions under Minn.Stat. §§ 609.342 to 609.346 (1984). Defendant argues that it was error for the trial court to rely on this rule in excluding some of the offered evidence because the rule relates to "the victim's previous sexual conduct," whereas defendant was not trying to show any prior consensual sexual conduct of the victim but the source of the victim's knowledge of sexual matters. We need not decide whether the rule was intended to govern the admission of evidence of the sort offered by defendant. In *State v. Caswell,* 320 N.W.2d 417 (Minn.1982), we construed the rule in such a way as to allow the admission of a victim's past sexual conduct in all cases in which admission is constitutionally required by the defendant's right to due process, his right to confront his accusers, or his right to offer evidence in his own defense. Despite the prohibition of a rape-shield law or rule, a trial court has discretion to admit evidence tending to establish a source of knowledge of or familiarity with sexual matters in circumstances where the jury otherwise would likely infer that the defendant was the source of the knowledge. H. Galvin, *Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade,* 70 Minn.L.Rev. 763, 865–868 (1986). However, as in ruling on the admission of other kinds of evidence, the trial court ought to balance the probative value of the evidence against its potential for causing unfair prejudice. Our examination of the record in this case satisfies us that the trial court properly engaged in this balancing approach. On the one hand, the trial court gave defendant some leeway in questioning the victim and others in an attempt to show that someone else, not defendant, was the source of the victim's knowledge of sexual matters. On the other hand, the trial court did not allow defense counsel to cross-examine the victim's mother about sexual abuse in her family when she was growing up and about her brother's sexual assault conviction (although the trial court did allow defense counsel to establish that she knew someone who had been charged with a different kind of sex offense). If the evidence in question had tended to establish a different source for the victim's knowledge, undoubtedly the trial court would have admitted the evidence. However, given the weak probative value of the evidence and the potential of the evidence for causing unfair prejudice, we are satisfied that the trial court did not abuse its discretion in ruling as it did.

Other issues—the trial court's denial of a motion for a new trial based on other grounds and the trial court's denial of a stay of defendant's 43-month prison sentence pending appeal—do not merit discussion.

Reversed and judgment of conviction reinstated.