**STATE of Minnesota, Respondent,**

v.

**Duane Dean OLSON, Jr., Appellant.**

**No. C5–89–2127.**

Court of Appeals of Minnesota.

Sept. 4, 1990.

Review Denied Oct. 25, 1990.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert M.A. Johnson, Anoka County Atty., Robert D. Goodell, M. Katherine Doty, Asst. County Attys., and Laura Jean Rathmann, Sp. Asst. County Atty., Anoka, for respondent.

Phillip S. Resnick, Minneapolis, for appellant.

Considered and decided by SHORT, P.J., and LANSING, and CRIPPEN, JJ.

## OPINION

LANSING, Judge.

Duane Olson was tried on second degree murder and first degree manslaughter charges in the death of his six-week-old son, Dustin. The jury found him not guilty of second degree murder, but guilty of first degree manslaughter, and the trial court sentenced him to forty-one months in prison. On appeal, Olson challenges evidentiary rulings, the sufficiency of the evidence, the jury instructions, and the sentence. We affirm.

## FACTS

On January 4, 1988, Duane Olson called the police and reported that his six-week-old baby, Dustin, had stopped breathing. The baby was taken to a hospital and immediately placed on life support systems. Physicians who treated Dustin observed that although the infant was not bruised or cut, his anterior fontanelle or "soft spot" was pulsating, he had no corneal reflex, no gag or cough reflex, no spontaneous effort at breathing, no pupil response to stimuli, and no spontaneous movement of his arms and legs. A CT scan indicated that Dustin suffered from severe traumatic brain injury.

Because the nature of Dustin's injury suggested child abuse, the police initiated an investigation. Olson and his wife agreed to meet with the investigator at the sheriff's office in Anoka County. Under videotaped interrogation at the sheriff's office, Olson admitted that in the early morning of January 1, 1988, he lifted Dustin and shook him to stop him from crying. When Dustin did not stop crying, Olson shook him harder. The baby continued to cry, and Olson shook him even harder the third time. Olson then fed Dustin and returned to bed. Olson stated that during the days intervening between this incident and Dustin's hospitalization, Dustin appeared very disturbed. Olson also admitted that he had shaken Dustin in a similar manner a few weeks earlier.

On January 8, 1988, Dustin was pronounced dead and all life-support systems were disconnected. An autopsy revealed that the infant had bilateral subdural hematomas, collections of blood overlying the outer surface of the brain. According to the medical examiner, Dustin's brain had swollen, resulting in herniation, respiratory arrest, and ultimately death.

At trial, three prosecution expert witnesses testified on the cause of Dustin's death. Dr. John Ring, the primary treating physician, testified that Dustin's death was caused by a traumatic brain injury, occurring within a week prior to his hospitalization, most probably resulting from shaking. Dr. Carolyn Levitt testified that Dustin's brain injury was caused by a violent shaking. Dr. Michael McGee, the medical examiner, testified that Dustin's death resulted from shaken baby syndrome. In Olson's defense, Dr. Gerald Slater testified that Dustin's injuries could not have resulted from shaking.

After the evidence was presented to the jury, the trial court instructed on the manslaughter charge and the second degree murder charge. The jury found Olson guilty of first degree manslaughter and not guilty of second degree murder. Following sentencing, Olson brought this appeal.

## ISSUES

1. Did the trial court improperly admit evidence?

2. Is the evidence sufficient to support the jury's verdict of first degree manslaughter?

3. Did the trial court err by submitting both the second degree murder and the first degree manslaughter charges to the jury?

4. Did the trial court err by instructing the jury that a pre-existing injury did not break the chain of causation?

5. Did the trial court err by imposing the Minnesota Sentencing Guidelines presumptive sentence?

## ANALYSIS

I. Admissibility of Evidence

Olson contends that the trial court erred by admitting into evidence (1) his state-

ments to the police, (2) testimony of prior "bad acts", and (3) photographs of the deceased infant. Each will be addressed separately.

### A. *Statements to Police*

It is well settled that individuals must be given a Miranda warning before being subjected to custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Olson and the state dispute whether Olson was in custody when he confessed to shaking Dustin.

■ The record indicates that Olson and his wife voluntarily accepted an invitation to meet police investigators at the sheriff's office. Olson and his wife were questioned separately. Olson was interrogated in a small interview room for approximately 90 minutes. At the beginning of the interview the police investigator advised Olson he was not in custody or under arrest and that he was free to leave at any time. Olson indicated that he understood these conditions and when the interview was completed, Olson left the sheriff's office without hindrance.

These facts closely parallel the facts in *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). In *Mathiason*, the Court stated:

> [Respondent] came voluntarily to the police station, where he was immediately informed that he was not under arrest. At the close of a ½–hour interview respondent did in fact leave the police station without hindrance. It is clear from these facts that [respondent] was not in custody "or otherwise deprived of his freedom of action in any significant way".

*Id.* at 496, 97 S.Ct. at 714. Because *Mathiason* cannot be distinguished from this case, we believe the trial court did not err in determining that Olson was not in custody and that failure to provide a Miranda warning does not make his statements inadmissible.

■ Olson claims that even if he was not entitled to a Miranda warning, his statements should have been suppressed because they were involuntary. In determining the voluntariness of a statement, the court must examine whether the defendant's "will was overborne", considering the totality of the circumstances. *Lynumn v. Illinois*, 372 U.S. 528, 534, 83 S.Ct. 917, 120, 9 L.Ed.2d 922 (1963); *State v. Martinson*, 422 N.W.2d 282, 287 (Minn. App.1988). We find nothing in the record indicating that Olson's will was overborne during his interrogation.[1]

### B. *Spreigl Evidence*

■ The trial court permitted the state to introduce evidence of Olson's previous abuse of Dustin. One incident involved a torn web of tissue that connected Dustin's upper lip to the area just above his teeth. Olson's wife testified that several weeks prior to Dustin's hospitalization, she and Olson had found Dustin with a bloody face resulting from this injury. Olson suggested to his wife that Dustin might have scratched his mouth with his fingernail. A physician testified at trial that Dustin could not have caused this injury and that someone jerked or pulled Dustin's upper lip.

The other incident involved a prior shaking of Dustin. Olson admitted to a police investigator that in the latter part of December, he shook Dustin to stop him from crying. According to a medical examiner, Dustin had suffered from a previous traumatic brain injury that took place during that same month.

■ Minn.R.Evid. 404(a) provides that "bad acts" or "other crimes" evidence is admissible to establish proof of motive, intent, and absence of mistake or accident. In applying this rule, the court must examine (1) whether the evidence is relevant and material to the state's case; (2) whether the evidence of the defendant's participation in the offense is clear and convincing; and (3) whether the probative value of

---

1. The use of leading questions during interrogation does not require a determination that statements were involuntary. *State v. Rainey*, 303

Minn. 550, 552, 226 N.W.2d 919, 921 (Minn. 1975).

the evidence outweighs its potential for unfair prejudice. *State v. Filippi*, 335 N.W.2d 739, 743 (Minn.1983).

Olson disputes the link between him and Dustin's mouth injury. We are persuaded that the trial court did not abuse its discretion in ruling that the evidence of Olson's participation was clear and convincing. Dustin's mouth injury was caused by child abuse when Dustin was in the care of Olson and his wife. Although Olson's wife did not expressly deny involvement in the offense, the clear inference of her statements is that she did not harm Dustin. By process of elimination, the evidence points to Olson as the offender. This evidence of participation is clearer and more convincing than that in *State v. Ostlund*, 416 N.W.2d 755 (Minn.App.1987) *pet. for rev. denied* (Minn. Feb. 24, 1988), in which there was little or no direct evidence establishing defendant's presence with the infant when the alleged *Spreigl* acts occurred.

In the incident involving the prior shaking of Dustin, Olson's participation was also clearly established. Witness testimony ruled out alternative explanations.

### C. *Photographs*

During the testimony of the medical examiner, the trial court admitted into evidence several autopsy photographs. One photograph depicted Dustin's outstretched body and another showed Dustin's face. Olson claims these two photographs had no relevant purpose.

■ Photographs are admissible if they accurately portray what a witness would be permitted to describe or if they aid a description, provided they are relevant. *State v. De Zeler*, 230 Minn. 39, 46–47, 41 N.W.2d 313, 319 (1950). In our view, the photograph displaying Dustin's outstretched body was admissible, as it accurately portrayed the swelling of Dustin's head and illustrated the medical testimony. *See State v. Plowman*, 386 N.W.2d 546, 551 (Iowa App.1986). The photograph of Dustin's face was also admissible, as an accurate portrayal of Dustin's mouth injury. The trial did not err in admitting the photographs into evidence.

### II. Sufficiency of the Evidence

■ In examining the sufficiency of the evidence, we must determine whether the trier of fact could have reasonably found the defendant guilty of the offense charged. *State v. Ibarra*, 355 N.W.2d 125, 129 (Minn.1984). The evidence must be interpreted in a light most favorable to the verdict, and it must be assumed that the prosecution witnesses were believed and the defense witnesses were disbelieved. *Id.* at 130.

■ Three prosecution expert witnesses expressed an opinion that Dustin's brain injury was caused by shaking. Expert testimony also established that the injury occurred within one week prior to Dustin's hospitalization. In addition to the expert testimony, Olson confessed to police that three days prior to Dustin's hospitalization, he shook Dustin vigorously. Olson also admitted that Dustin acted very disturbed during the days following this incident. Together, the evidence supports a finding that Olson committed first degree manslaughter.

### III. The Charges

■ Public policy favors a verdict based on the evidence, not leniency or sympathy. In furtherance of this policy, a trial court should refrain from submitting jury instructions on a greater and lesser included offense if the jury has no rational basis to acquit on the greater offense and convict on the lesser included offense. *State v. Solomon*, 359 N.W.2d 19, 21 (Minn.1984); *State v. Adams*, 295 N.W.2d 527, 532 (Minn.1980). Olson argues that the trial court violated this rule by submitting jury instructions on both the second degree felony-murder and first degree misdemeanor-manslaughter charges.[2]

---

**2.** Felony-murder is defined as:
Caus[ing] the death of a human being, without intent to effect the death of any person, while committing or attempting to commit a felony offense other than criminal sexual con-

We agree that the trial court should not have submitted both the second degree murder and the first degree manslaughter charges to the jury. Second degree felony-murder and first degree misdemeanor-manslaughter differ by the degree of seriousness of their underlying offenses—the severity of the bodily harm inflicted by the assailant. *See* Minn.Stat. §§ 609.02, subd. 10, 609.223, 609.224 (1990). The underlying offense for the felony murder charge is third degree (felony) assault, and the underlying offense for the misdemeanor-manslaughter charge is fifth-degree (misdemeanor) assault. This distinguishing feature is lost in the facts of this case, however, because for both charges, the assailant necessarily inflicted the ultimate harm, death. Thus, if Olson was guilty of first degree misdemeanor-manslaughter, he was necessarily guilty of felony murder. *See Ostlund,* 416 N.W.2d at 766 (manslaughter instruction inappropriate because "if appellant is guilty at all [for baby-shaking], she is guilty of the greater offense of second degree murder").

Nevertheless, Olson did not specifically request the trial court to submit only the greater offense, and reversible error should not be premised on the trial court's failure to limit the submitted offenses. *Solomon,* 359 N.W.2d at 21. The error presumably benefited Olson because a jury, acting rationally and according to law, might have convicted him of second-degree murder had the lesser offense not been submitted. Under these circumstances, Olson is not entitled to relief. *See Id.*

## IV. Pre-existing injury

The trial court instructed the jury that if the "chain of causation is in fact proven to the extent required, then such causal chain is not broken by the fact that a physical condition of Dustin Olson may have made him more susceptible to injury." Olson argues that this instruction was erroneous for the manslaughter charge because it negated the foreseeability requirement of the offense. We do not agree. Under the first degree manslaughter statute, foreseeability is a distinctly different element from causation. Instructions were given for each element. The instructions were not contradictory, and the charge read as a whole correctly stated the law. *See State v. Anderson,* 261 Minn. 431, 434, 113 N.W.2d 4, 7 (Minn.1962).

## V. Sentence Guidelines

A trial court may depart from the sentencing guidelines if "the individual case involves substantial and compelling circumstances." Minnesota Sentencing Guidelines II.D (1988). Even if there are grounds to depart, the trial court is not necessarily obligated to depart, and if the presumptive sentence is imposed, we will not ordinarily interfere with the exercise of the trial court's discretion. *See State v. Kindem,* 313 N.W.2d 6, 7 (Minn.1981); *Herme v. State,* 384 N.W.2d 205, 209 (Minn.App.1986).

The trial court sentenced Olson to forty-one months in prison, the low end of the presumptive sentence guidelines. In imposing this sentence, the court reasoned that although Olson was amenable to treatment in an individualized setting, this mitigating factor was counterbalanced by two aggravating factors: the vulnerability of the victim and the cruel treatment by the offender. *See* Minnesota Sentencing Guidelines II.D.2 (1988).

The trial court's reasons are supported by the record. The victim was a six-week-old baby who was absolutely defenseless. This is certainly an aggravating factor to be weighed when considering whether to depart from the presumptive sentence. *See State v. Udstuen,* 345 N.W.2d 766, 768 (Minn.1984) (upward departure upheld where three-month-old victim was absolute-

---

duct in the first or second degree with force or violence.
*See* Minn.Stat. § 609.19(2) (1990). Misdemeanor-manslaughter is defined as:
  Caus[ing] the death of another in committing or attempting to commit a misdemeanor or gross misdemeanor offense with such force or violence that death of or great bodily harm to any person was reasonably forseeable, and murder in the first or second degree was not committed thereby.
*See* Minn.Stat. § 609.20(2) (1990).

ly vulnerable). Additionally, Olson's treatment of the infant was particularly cruel. In light of these factors, the trial court did not abuse its discretion in refusing to depart dispositionally from the presumptive sentence.

## DECISION

We affirm the trial court in the evidentiary rulings, its instruction on pre-existing injuries and in its refusal to depart downward from the sentencing guidelines. Although the court should not have submitted both charges to the jury it does not constitute reversible error. The evidence is sufficient to support the conviction.

Affirmed.