STATE of Minnesota, Respondent,

v.

Jeffrey Howard KOBOW, Appellant.

No. C5–90–870.

Court of Appeals of Minnesota.

March 5, 1991.

Review Denied April 18, 1991.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Asst. Atty. Gen., St. Paul, Wyman A. Nelson, Wright Co. Atty., Buffalo, for respondent.

John M. Stuart, State Public Defender, Steven P. Russett, Asst. State Public Defender, St. Paul, for appellant.

Considered and decided by NORTON, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Appellant Jeffrey Howard Kobow appeals his conviction and sentence for four counts of criminal sexual conduct in the second and fourth degree. He assigns a number of errors including an evidentiary ruling, submission of lesser-included offenses upon court's own motion, and the sentence of the court. We affirm.

## FACTS

Appellant was convicted of second and fourth degree criminal sexual conduct for sexually abusing T.L.H., the fourteen-year-old daughter of appellant's girlfriend.[1] At trial, T.L.H. testified to several instances of sexual abuse.

Appellant touched T.L.H. for the first time in July of 1988. While T.L.H. was sleeping on the couch in her living room, she felt something touching her legs. Thinking it was the family dog, she tried to slap it away. When it didn't stop, T.L.H. woke up to find appellant on the floor next to the couch touching her. T.L.H. told appellant never to touch her again. The next morning appellant told T.L.H. to pretend like nothing ever happened.

The next incident occurred in late July of 1988 while T.L.H.'s mother was in the hospital. Appellant took T.L.H. to the hospital to see her mother and afterwards to swim at Lake Pulaski. Appellant and T.L.H. returned to his house where appellant offered T.L.H. some marijuana. They smoked marijuana together and T.L.H. blacked out.

T.L.H. testified that she woke up naked in appellant's bed and when she tried to get up, appellant pulled her back into the bed and had sexual intercourse with her. Afterwards, T.L.H. got up to take a shower. Appellant followed T.L.H. into the shower and had sex with her again. T.L.H. testified that appellant touched her all over including her breasts and bottom. After the shower, appellant called T.L.H. back into his bedroom and had sexual intercourse with her "on and off the whole night."

When appellant went to work the next morning, he left T.L.H. $20 and a note telling her to buy "some stuff for his house." At lunch, appellant came home and asked T.L.H. if she remembered any-

---

1. Appellant and T.L.H.'s mother were married in January of 1989.

thing from the night before. When T.L.H. said yes, appellant said, "Don't tell anything otherwise your mom will be highly pissed."

T.L.H. testified that appellant took her to see her mother again the next day and then stayed at T.L.H.'s house that night. While T.L.H. was sleeping in her room, appellant came in and took her shirt off. Appellant put T.L.H.'s legs behind his neck and proceeded to have sexual intercourse with her.

In August of 1988, appellant and his son moved in with T.L.H. and her mother. T.L.H. testified that after appellant moved in, he would have sex, including oral sex, with her two to three times during the week and on weekends. T.L.H. testified that appellant gave her drugs every week before or after they had sex.

In March 1989 the court placed T.L.H. on probation for possession of LSD and truancy. T.L.H. admits to having used alcohol and drugs since the seventh grade and skipping school in the ninth grade.

Cynthia Ernhart, T.L.H.'s probation officer, met T.L.H. two years earlier when T.L.H. was arrested for shoplifting. The Wright county service placed T.L.H. in the diversion program, an informal probation program. Ernhart testified that she observed appellant and T.L.H. holding hands and hugging at probation meetings. Ernhart thought T.L.H. reacted nervously to such contact and, in her opinion, such contact between a parent and child was not normally observed in her office.

In April 1989, T.L.H. asked Ernhart to place her out of the home because of school and drug problems. Ernhart placed T.L.H. in Woodland Hills, a highly structured juvenile treatment home located in Duluth. Her counselors identified T.L.H.'s problems with low self-image, authority, alcohol and drugs. T.L.H. had dealt with these problems at home by using drugs and alcohol. Mary Steiner–Blair, T.L.H.'s group leader at Woodland Hills, testified that when T.L.H. first arrived there she appeared undernourished, emotionally distraught, weak, self-abusive and had nightmares. T.L.H. first reported appellant's sexual abuse at a group meeting on September 7, 1989.

Steiner–Blair and Detective Charles Nelson of the Wright County Sheriff's Office corroborated T.L.H.'s testimony. Steiner–Blair testified that T.L.H. reported to her at a meeting on September 11, 1989 substantially the same incidents T.L.H. testified to at trial. Nelson interviewed T.L.H. on September 19. During trial, appellant was not permitted to elicit testimony from Steiner–Blair that T.L.H. had accused other people of sexually abusing her.

T.L.H.'s mother testified for the defense that she worked three jobs: one job from 4:30 a.m.–3:30 p.m., another from 5:00 p.m.–8:30 p.m., and finally one on Saturday and Sunday afternoons and evenings. She also testified that she never observed any sexual interaction between appellant and T.L.H. and that she was a light sleeper and would have known if appellant had been sneaking out of the bedroom to have sex with T.L.H.

When charged with four counts of first degree criminal sexual conduct, appellant pleaded not guilty and testified at the first trial, denying that he gave drugs to or had sex with T.L.H. The jury acquitted appellant of one count and was unable to reach a verdict on the remaining three counts. The trial court ordered a new trial on those three counts.

Appellant did not testify at the second trial. At the close of evidence the trial court, in addition to the three counts of first degree criminal sexual conduct, submitted to the jury four counts of second and fourth degree criminal sexual conduct charges on the court's own motion. The jury found appellant not guilty of the first degree charges but guilty of the second and fourth degree charges.

## ISSUES

1. Did the trial court abuse its discretion in excluding evidence that T.L.H. had made allegations that individuals other than appellant had sexually abused her?

2. Did the trial court abuse its discretion in submitting four counts of lesser-in-

cluded offenses of second and fourth degree criminal sexual conduct on its own motion?

3. Did the trial court err in departing durationally from the presumptive sentence?

## ANALYSIS

### I.

Appellant alleges the trial court abused its discretion in excluding evidence that T.L.H. had made allegations that individuals other than appellant had sexually abused her. We disagree.

■ In Minnesota the

[a]ppellate courts largely defer to the trial court's exercise of discretion in evidentiary matters and will not lightly overturn a trial court's evidentiary ruling.

*State v. Kelly,* 435 N.W.2d 807, 813 (Minn. 1989). "Absent a clear abuse of discretion, the ruling will stand." *Id.* If exclusion of the evidence did violate defendant's constitutional right to present a defense, we will not reverse the decision if the error is found to be harmless beyond a reasonable doubt. *Id.* "A ruling is prejudicial and therefore reversible if there is a reasonable possibility that the error complained of may have contributed to the conviction." *Id.*

In the present case, the trial court conducted a detailed hearing on the admissibility of evidence that T.L.H. had alleged that other individuals had abused her. Before excluding the evidence, the trial court specifically considered the question whether an "allegation of sexual abuse" is the same as "sexual conduct."

■ Appellant argues that T.L.H.'s allegations of sexual abuse do not constitute "sexual conduct" within the meaning of the rape shield statute. Appellant implies that "sexual conduct" only covers prior consensual acts of the complainant. However, the statute does not draw this distinction.

In addition, Minnesota courts have applied the term "sexual conduct" to exclude evidence of cohabitation, *State v. Hill,* 309 Minn. 206, 211, 244 N.W.2d 728, 731 (1976), *cert. denied* 429 U.S. 1065, 97 S.Ct. 794, 50 L.Ed.2d 782 (1977) and sexual preference. *State v. Mar,* 291 N.W.2d 223, 225 (Minn. 1980). Indeed, in *State v. Carpenter,* 459 N.W.2d 121 (Minn.1990), the supreme court did not question the applicability of the rape shield law to a fourteen-year-old victim; a victim clearly too young to consent. *Id.* at 125. We agree with the trial court that the term "sexual conduct" as used in Minn.Stat. § 609.347 includes "allegations of sexual abuse."

Minnesota's rape shield laws strictly limit the admission of evidence of "a victim's previous sexual conduct." *Carpenter,* 459 N.W.2d at 125; *see* Minn.Stat. § 609.347, subd. 3; Minn.R.Evid. 404(c).[2]

Previous sexual conduct shall not be admitted nor any reference to such conduct made in the presence of the jury except by court order according to the procedure provided in Rule 404(c)(2).

*Carpenter,* 459 N.W.2d at 125–26 (footnote omitted).

■ While the law prohibits admission unless the accused follows the procedure set out in Minn.R.Evid. 404(c)(2), evidence of a victim's past sexual conduct may be admitted where it is constitutionally required by the defendant's right to due process, his right to confront his accuser, or his right to offer evidence in his own defense. *State v. Caswell,* 320 N.W.2d 417, 419 (Minn.1982). However,

as in ruling on the admission of other kinds of evidence, the trial court ought to balance the probative value of the evidence against its potential for causing unfair prejudice.

*State v. Benedict,* 397 N.W.2d 337, 341 (Minn.1986). Finding that the trial court engaged in such a balancing approach, the *Benedict* court upheld the trial court's exclusion of evidence

---

**2.** Minn.R.Evid. 404(c) was amended and redesignated as Minn.R.Evid. 412, effective Jan. 1, 1990.

tending to establish a source of knowledge of or familiarity with sexual matters in circumstances where the jury otherwise would likely infer that the defendant was the source of the knowledge. *Id.*

■ At trial, appellant sought to admit the evidence of T.L.H.'s prior allegations of sexual abuse to impeach her credibility as a truthful witness. However, T.L.H. made no statement during direct examination on this issue of prior allegations of abuse. Having made no such statements, T.L.H. was not subject to impeachment on that issue. Had T.L.H. testified that she had never alleged sexual abuse before, *then* appellant may have had grounds to present evidence of her prior allegations to impeach her veracity as a witness. Even then, however, the court would have had to weigh the probative value against the prejudicial effect of testimony regarding her sexual conduct under 404(c).

■ Appellant also contends that the exclusion denied him his right to present a defense because the excluded evidence would have provided the jury with someone other than appellant to blame for T.L.H.'s behavior and would have provided a possible motive for fabrication to impeach T.L.H.'s credibility.

As indicated, the trial court conducted a lengthy hearing and weighed the probative value of the evidence against its potential for prejudice as required by *Benedict*, 397 N.W.2d at 341. In *Benedict*, the supreme court approved of "the trial court [giving] defendant some leeway in questioning the victim and others to show that someone else * * * was the source of * * * knowledge of sexual matters" while prohibiting "defense counsel [from] cross-examin[ing] the victim's mother about sexual abuse in her family." *Benedict*, 397 N.W.2d at 341. Based on our review of the record, we are satisfied that appellant here was permitted the leeway described in *Benedict*.

With respect to appellant's argument that the excluded evidence provided a possible motive for fabrication, appellant's reliance on *State v. Anderson*, 394 N.W.2d 813 (Minn.App.1986), *pet. for rev. denied* (Minn. Dec. 12, 1986) is misplaced. *Anderson* holds that where evidence of sexual abuse charges relates to a possible motive for fabrication, the trial court must carefully weigh probative value against prejudicial impact and specifically address the parties' concerns. *Id.* at 817–18. Here, the trial court did conduct such a balancing test. Furthermore, *Anderson* only permitted the admission of prior *false* reports of rape. Here, appellant could not show that T.L.H.'s prior allegations were false.

Further, appellant's reliance on *Caswell* regarding fabrication is misplaced. In that case, the supreme court found that the trial court erred when it excluded evidence that the victim had made an admittedly false report to the police of a rape. *Id.*, 320 N.W.2d at 419. However, it was the victim herself in *Caswell* who admitted the falsity of the report of rape. In the present case there is no showing that T.L.H.'s prior allegations of sexual abuse were false.

Allegations by the victim of prior sexual abuse came within the provisions of the rape shield laws, and we find no abuse of discretion in the trial court's refusal to permit testimony regarding those allegations.

## II.

Appellant next alleges the trial court erred in submitting to the jury four counts of lesser-included offenses of second and fourth degree criminal sexual conduct on its own motions. Second and fourth degree criminal sexual conduct are lesser-included offenses of first degree criminal sexual conduct. The only issue, therefore, is whether on the evidence presented here the trial court on its own motion properly submitted these lesser-included offenses to the jury.[3]

---

**3.** This specific issue appears to be one of first impression in Minnesota. All cases which the parties cite address whether the trial court abused its discretion in (1) refusing to submit lesser-included charges to the jury at defense's request, *see State v. Leinweber*, 303 Minn. 414, 228 N.W.2d 120 (1975), or (2) submitting both the greater and the lesser offenses charged by

The determination of what, if any, lesser offense to submit to the jury lies within the sound discretion of the trial court. *Kelly*, 435 N.W.2d at 812 (holding court did not err in refusing defendant's request to submit lesser-included offenses). In determining what, if any, lesser degrees should be submitted, the test should be whether the evidence would reasonably support a conviction of the lesser degree and at the same time justify a finding of not guilty of the greater offense. *Leinweber*, 303 Minn. at 422, 228 N.W.2d at 125–26.

Where the evidence meets that test, the trial court has a *duty* to submit such lesser offenses so the jury may properly carry out its deliberations. *State v. Malzac*, 309 Minn. 300, 304, 244 N.W.2d 258, 261 (1976) (quoting *Leinweber*, 303 Minn. at 422, 228 N.W.2d at 126). In addition,

> Upon an indictment or complaint for an offense consisting of different degrees, the *jury may find the defendant not guilty of the degree charged in the indictment or complaint, and guilty of any degree inferior to that.* Upon an indictment or complaint for an offense, the jury may find the defendant not guilty of committing it, and guilty of an attempt to commit it. Upon an indictment or complaint for murder, if the jury finds the defendant not guilty, it may, upon the same indictment or complaint, find the defendant guilty of manslaughter in any degree. In all other cases, *the defendant may be found guilty of any offense necessarily included in that offense with which the defendant is charged in the indictment or complaint.*

Minn.Stat. § 631.14 (1988) (emphasis added). Based on this authority, we hold that the trial court may submit lesser-included offenses on its own motions where the evidence warrants their submission.

Appellant argues that the elements distinguishing first, second and fourth degree criminal sexual conduct were not sufficiently in dispute and therefore there was no rational basis for the jury to acquit him of the greater offense while finding him guilty of the lesser offense. Relying on *State v. Olson*, 459 N.W.2d 711, 715 (Minn. App.1990), *pet. for rev. denied* (Minn. Oct. 25, 1990), appellant urges that the trial court erred when it included the lesser offenses because appellant was either guilty as charged or not at all; inclusion of lesser-included offenses contributed to a compromised verdict.

We find appellant's arguments unpersuasive. The offenses involved in *Olson* "differ by the degree of seriousness of their underlying offenses." *Id.* at 716. No such distinction can be made with the offenses involved in the present case. Second and fourth degree criminal sexual conduct are lesser-included offenses of first degree criminal sexual conduct. The difference is simply one of sexual contact versus sexual penetration. *Compare* Minn.Stat. § 609.342 (1988) with Minn.Stat. §§ 609.343 and 609.345 (1988). Testimony regarding sexual penetration is sufficient to raise an inference of sexual contact. More importantly, T.L.H. testified about two specific instances of sexual contact.[4] The evidence supports the trial court's decision to submit the lesser charges even though the issue of penetration versus contact was not specifically distinguished in T.L.H.'s testimony. We find no abuse of discretion.

### III.

Finally, appellant alleges the trial court abused its discretion in departing du-

---

the prosecution where the evidence, if believed, established only the greater offense. *See State v. Solomon*, 359 N.W.2d 19, 21 (Minn.1984). None of the cases deal with the situation where the trial court submitted lesser-included offenses on its own motion. We note, however, that both Wisconsin and Iowa have approved a sua sponte submission of lesser-included offenses. *See Kirby v. State*, 86 Wis.2d 292, 272 N.W.2d 113 (1978), *pet. for rev. denied* (Wis.

Feb. 19, 1979); *State v. Greer*, 439 N.W.2d 198 (Iowa 1989).

**4.** We note that we must interpret the evidence in a light most favorable to the verdict and must assume that the jury believed the witnesses for the prosecution and disbelieved the witnesses for the defense. *State v. Ibarra*, 355 N.W.2d 125, 130 (Minn.1984).

rationally from the presumptive sentence. We disagree.

The guideline sentences are presumed to be appropriate for every case. Minn.Sent. Guidelines II.D. However, in a small number of cases, substantial and compelling aggravating or mitigating factors permit departure. *Id.* Minn.Sent. Guidelines Comment II.D.01. "When such factors are present, the judge may depart from the presumptive [disposition or duration] provided in the sentencing guidelines." *Id.* Minn.Sent. Guidelines II.D. Generally, the appellate court "will not interfere with that discretion unless it has a 'strong feeling' that the sentence is disproportionate to the offense." *State v. Schenk,* 427 N.W.2d 12, 13 (Minn.App.1988).

> The general issue that faces a trial court in deciding whether to depart durationally is whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question.

*State v. Back,* 341 N.W.2d 273, 276 (Minn. 1983).

The presumptive sentence for appellant's offense was 24 months executed. The trial court departed durationally and imposed an executed sentence of 45 months and ordered appellant to pay restitution. To substantiate this departure, the trial court reasoned:

> First, your use of drugs in the commission of this offense; your accomplishing these acts by furnishing T with substantial amounts of drugs over an extended period of time.
>
> Secondly, T's particular vulnerability. She was the daughter of your wife when most of these acts were committed, living in the same household as you.
>
> Thirdly, the substantial effect that these acts have had on T through the Court's listening to and reading her victim loss statement.
>
> And lastly, significant to the Court in a departure is the substantial number of times that this offense was committed. Although the Court recognizes that the statute for which [you are] convicted defines multiple acts, we're not talking

about two or three times, but 60, 70, 80, or even 90 times that these offenses were committed on a regular and consistent basis over that long period of time.

Because we find particularly persuasive the vulnerability of T.L.H. as set forth in factor two, we do not address the other factors which the court listed. Vulnerability is clearly an aggravating factor for the court to weigh when considering whether to depart from the presumptive sentence. *See State v. Strommen,* 411 N.W.2d 540, 543–44 (Minn.App.1987), *pet. for rev. denied* (Minn. Oct. 28, 1987). The trial court did not abuse its discretion in departing durationally from the presumptive sentence.

### DECISION

We affirm the trial court in its evidentiary ruling, its submission of lesser-included offenses on its own motion and its departure from the sentencing guidelines.

Affirmed.