*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1498**

State of Minnesota,
Respondent,

vs.

Gerald Michalec,
Appellant

**Filed September 21, 2015
Affirmed
Worke, Judge**

Ramsey County District Court
File No. 62-CR-12-4939

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Andrew R.K. Johnson, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea G. Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Worke, Judge; and Hooten, Judge.

**U N P U B L I S H E D  O P I N I O N**

**WORKE**, Judge

Appellant challenges his convictions of first- and third-degree criminal sexual

\conduct, arguing that the district court abused its discretion by (1) permitting the victim

to testify regarding appellant's prior inappropriate sexual contact, (2) prohibiting appellant from cross-examining the victim regarding a prior inconsistent allegation of sexual contact, and (3) prohibiting appellant from impeaching the victim with her prior misdemeanor theft charges. Appellant also asserts that the district court improperly sentenced him to a lifetime conditional-release period. We affirm.

## FACTS

In June 2010, J.M. reported to her school nurse that three months earlier her grandfather, appellant Gerald Michalec, digitally penetrated her vagina. J.M. had previously disclosed the abuse to the school social worker, who took her to the school police officer. J.M. initially denied the abuse to the officer, later explaining that she was afraid she would be removed from her home and have to attend a different school. A child-advocacy nurse subsequently interviewed J.M., and she additionally reported a sexual-abuse incident by Michalec from Memorial Day weekend the prior year. Michalec was charged with first- and third-degree criminal sexual conduct. *See* Minn. Stat. §§ 609.342, subd. 1(g), .344 subd. 1(f) (2008).

J.M. testified at the jury trial that over Memorial Day weekend, when she was 15 years old, she sneaked out of Michalec's house, where she resided, to attend a party. The party was cancelled and she went to the home of a male friend where she fell asleep. The next morning, Michalec and J.M.'s father were waiting when she returned home. Michalec asked her where she had been and what happened. J.M. eventually admitted to having had sex. Michalec took her to the friend's house where he spoke with the friend. When they returned home, J.M. attempted to convince Michalec that she did not actually

2

have sex. Michalec told her that he would take her to a clinic to "check." J.M. pleaded with him not to take her to the clinic. Michalec then "checked" her "by using his fingers" to penetrate her vagina.

The following March, when J.M. was 16 years old, J.M.'s friend sneaked into her room and engaged in consensual sex with her. When the friend was about to leave, Michalec came into the room, started yelling, and hit the friend, giving him a black eye. Michalec instructed J.M. to remove her blanket so that he could "check" her. He then digitally penetrated her vagina. J.M. testified that she told friends about the incident, but did not immediately tell her counselor because she was afraid "that they would try and put [her] in a foster home like last time." "Last time" referred to a 2003 incident when J.M. was nine years old and called 911 immediately after she awoke to Michalec "breathing down on [her] vagina" and putting his penis on her foot. After that incident, J.M. was placed in a foster home and removed from school for two months.

Michalec moved in limine to prohibit evidence about the 2003 incident and to permit cross-examination of J.M. regarding two prior thefts and a prior inconsistent allegation of sexual abuse against her father.[1] The district court denied these requests.

---

[1] Michalec claims that J.M. had previously told a mental-health professional that her father had raped her. She told the child-advocacy nurse that no one besides Michalec had unwanted sexual contact with her. We note that the record does not include the notes from the mental-health professional regarding this statement, only that Michalec moved to cross-examine J.M. regarding the statement. The district court denied the motion, finding that the potential of confusing the jury and creating unfair prejudice outweighed its probative value. *See* Minn. R. Evid. 403 (stating that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or misleading the jury).

Prior to the testimony about the 2003 incident, the district court instructed the jury that that the evidence was offered for

> the limited purpose of demonstrating the nature and extent of the relationship between [Michalec] and [J.M.] in order to assist you in determining whether [Michalec] committed those acts in which [he] is charged in the [c]omplaint.
> [Michalec] is not being tried for and not being convicted of any behavior other than the charged offenses. You are not to convict [Michalec] on the basis of conduct in 2003, to do so might result in unjust, double punishment.

Michalec was convicted on both counts. This appeal follows.

## D E C I S I O N

### *Testimony about prior inappropriate sexual contact*

Michalec first argues that the district court abused its discretion by allowing J.M. to testify about the 2003 incident because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. Evidence of prior domestic conduct between a defendant and a victim may be offered to "illuminate the history of the relationship, that is, to put the crime charged in the context of the relationship between the two." *State v. McCoy*, 682 N.W.2d 153, 159 (Minn. 2004). "Domestic conduct" includes criminal sexual conduct committed against a family member. Minn. Stat. §§ 634.20, 518B.01, subd. 2(a)(3) (2008). The admissibility of a prior incident of domestic conduct depends on whether the offered evidence is evidence of similar conduct, and whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Minn. Stat. § 634.20; *State v. Waino*, 611 N.W.2d 575,

4

579 (Minn. App. 2000). Here, the parties do not dispute that the 2003 incident constitutes similar conduct.

We review a district court's admission of similar-conduct evidence in a domestic-abuse case under an abuse-of-discretion standard. *McCoy*, 682 N.W.2d at 161. If we conclude that the district court abused its discretion by admitting the evidence, we must then determine whether there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict. *State v. Post*, 512 N.W.2d 99, 102 n.2 (Minn. 1994).

Michalec argues that the evidence had low probative value and should have been excluded because it did not illuminate the history of the relationship between the parties, but was instead used to explain J.M.'s delayed reporting. "Evidence that helps to establish the relationship between the victim and the defendant or which places the event in context bolsters its probative value." *State v. Lindsey*, 755 N.W.2d 752, 756 (Minn. App. 2008), *review denied* (Minn. Oct. 29, 2008). There is "inherent value of evidence of past acts of violence committed by the same defendant against the same victim." *State v. Bell*, 719 N.W.2d 635, 641 (Minn. 2006) (quotation omitted).

In *State v. Ness*, the supreme court determined that the probative value of evidence of prior allegations of child sexual abuse was outweighed by the potential for unfair prejudice because the evidence was not relevant to the charged crime. 707 N.W.2d 676, 682, 689 (Minn. 2006). But *Ness* is distinguishable from the current case. Here, the disputed evidence involves testimony about an incident between Michalec and the same victim; *Ness* involved the admission of *Spreigl* evidence from a separate victim. *See id.*

5

at 682; *see also Bell*, 719 N.W.2d at 638-39 n.6 (distinguishing *Spriegl* evidence, governed by rule 404(b), from evidence offered under Minn. Stat. § 634.20). Moreover, the *Ness* court held that recourse was not warranted because the erroneously admitted testimony did not create "real and discernible prejudice" that significantly affected the verdict. *Id.* at 691.

In *McCoy*, the supreme court held that the district court did not abuse its discretion by allowing relationship "evidence that, if believed by the jury, could have assisted the jury by providing a context with which it could better judge the credibility of the principals in the relationship." 682 N.W.2d at 161. Here, J.M. was removed from her home and school after reporting the 2003 incident, and described the foster-care environment as "like containment." This testimony provides context for why J.M. delayed reporting and initially denied the abuse to the school liaison officer. *See State v. Loving*, 775 N.W.2d 872, 880 (Minn. 2009) (noting that relationship evidence has increased probative value when it places the charged offense into proper context).

Michalec also argues that J.M.'s testimony about the 2003 incident has low probative value because it was duplicative of the nurse's testimony, which explained why child sexual-abuse victims often delay reporting. We are not persuaded. An expert, such as a nurse, may identify behavioral characteristics commonly exhibited by sexually abused adolescents, including delays in reporting. *State v. Hall*, 406 N.W.2d 503, 504-05 (Minn. 1987). But a nurse may not vouch for the credibility of another witness. *Id.*; *see also State v. Ferguson*, 581 N.W.2d 824, 835 (Minn. 1998). Moreover, direct testimony explaining the delay in reporting has the additional purpose of refuting the defense that

6

the accusation was fabricated. *State v. Spencer*, 366 N.W.2d 656, 660 (Minn. App. 1985), *review denied* (Minn. July 11, 1985). Unlike the nurse's testimony that explains why children in general delay reporting abuse, J.M.'s testimony provides specific context for her own reporting delay.

Michalec asserts that the danger in admitting unfairly prejudicial testimony of the 2003 incident was high and may have motivated the jury to punish him for being a bad person or for the prior bad act rather than for the charged crime. The appellant has the burden to show unfair prejudice. *State v. Rucker*, 752 N.W.2d 538, 549 (Minn. App. 2008), *review denied* (Minn. Sept. 23, 2008). Damaging evidence alone does not create unfair prejudice; rather, unfair prejudice results when evidence persuades by illegitimate means, giving one party an unfair advantage. *Bell*, 719 N.W.2d at 641. Although the evidence was not favorable to Michalec, he has not proved that the jury used the evidence as propensity evidence or that the state received an unfair advantage.

Additionally, the jury received a cautionary instruction regarding the 2003 incident, limiting use of the testimony to relationship evidence to assist the jury in determining whether the defendant committed the acts with which he was charged. We presume that juries follow the court's instructions, *State v. Gatson*, 801 N.W.2d 134, 151 (Minn. 2011), and we presume that the jury in Michalec's case followed the district court's cautionary instruction. Consequently, the district court did not abuse its discretion by concluding that the probative value of the testimony regarding the 2003 incident was not substantially outweighed by the danger of unfair prejudice.

7

*Preclusion of prior criminal-sexual-conduct allegation*

Michalec next argues that the district court abused its discretion when it prohibited him from cross-examining J.M. about a prior inconsistent statement regarding a sexual-abuse allegation against her father. The district court concluded that the potential of confusing the jury outweighed the probative value of J.M.'s prior statement, noting that Michalec could impeach J.M. through other prior inconsistent statements. Michalec asserts that this was error that violated his constitutional right to present a complete defense, and that he is therefore entitled to a new trial.

The scope of cross-examination is largely left to the district court's discretion and we will not reverse absent an abuse of that discretion. *State v. Lanz-Terry*, 535 N.W.2d 635, 641 (Minn. 1995). But when an error implicates a constitutional right, a new trial will be awarded unless the error is harmless beyond a reasonable doubt. *State v. Davis*, 820 N.W.2d 525, 533 (Minn. 2012). An error is harmless when the reviewing court is "satisfied beyond a reasonable doubt that if the evidence had been admitted and the damaging potential of the evidence fully realized, a [reasonable] jury . . . would have reached the same verdict." *Post*, 512 N.W.2d at 102. When reviewing constitutional error, we first determine whether there was error, and, if so, whether the error was harmless beyond a reasonable doubt. *State v. Ferguson*, 804 N.W.2d 586, 590 (Minn. 2011).

Evidence of prior sexual conduct of the victim "shall not be admitted nor shall any reference to such conduct be made in the presence of the jury, except by court order." Minn. R. Evid. 412(1). Prior sexual conduct includes allegations of sexual abuse. *State*

*v. Kobow*, 466 N.W.2d 747, 750 (Minn. App. 1991), *review denied* (Minn. Apr. 18, 1991). But "evidence of a victim's past sexual conduct may be admitted where it is constitutionally required." *Id.*

Michalec argues that J.M.'s inconsistent statement is highly relevant because it went to her credibility and possibility of fabrication. We have held that "prior accusations of rape are relevant only to the victim's propensity to be truthful if there has been a determination that the prior accusations were indeed fabricated." *State v. Goldenstein*, 505 N.W.2d 332, 340 (Minn. App. 1993), *review denied* (Minn. Oct. 19, 1993).

In *Kobow*, the appellant was convicted of criminal sexual conduct for sexually abusing his girlfriend's fourteen-year-old daughter. 466 N.W.2d at 748. Kobow was not permitted to elicit testimony from a witness that the victim had made allegations that people other than Kobow had sexually abused her. *Id.* at 749. On appeal, Kobow argued that the district court's exclusion was an abuse of discretion which denied him his right to present a defense. *Id.* at 750–51. This court reasoned that the victim was not subject to impeachment because Kobow could not demonstrate that the victim's prior allegations were false. *Id.* at 751. Accordingly, the "[a]llegations by the victim of prior sexual abuse came within the provisions of the rape shield laws," and the district court did not abuse its discretion. *Id.*

At trial, Michalec conceded that he could not prove that J.M.'s prior accusation was false. As a result, we conclude that the district court did not abuse its discretion by precluding Michalec from cross-examining J.M. about her prior sexual-abuse allegations.

9

*Preclusion of cross-examination of victim's prior thefts*

Michalec next argues that the district court abused its discretion by precluding Michalec from cross-examining J.M. about her two theft charges because they were misdemeanor charges that did not result in convictions.[2] We will not reverse a district court's evidentiary ruling without a clear abuse of discretion. *Miles v. State*, 840 N.W.2d 195, 204 (Minn. 2013). In 2011, J.M. was caught stealing clothing from a department store. In 2014, J.M. admitted to stealing a license plate from another person's vehicle and putting the plate on her own car.

Under Minn. R. Evid. 608(b), specific instances of a witness's conduct may, in the discretion of the court, be inquired about on cross-examination for the purpose of attacking the witness's character for truthfulness. Thefts that involve dishonesty or false statements can be probative of a witness's character for truthfulness. *State v. Clark*, 296 N.W.2d 359, 368 (Minn. 1980). But misdemeanor shoplifting does not necessarily involve dishonesty or a false statement. *State v. Darveaux*, 318 N.W.2d 44, 48 (Minn. 1982).[3] There is no indication that J.M.'s shoplifting involved dishonesty and therefore

---

[2] J.M. was over 18 years old at the time of these charges. Therefore, statute and the rules of evidence regarding juveniles do not specially prohibit evidence of these charges. *See* Minn. R. Evid. 609(d) ("Evidence of juvenile adjudications is not admissible under this rule unless permitted by statute or required by the state or federal constitution."); Minn. Stat. § 260B.245, subd. 1(a) (2014) ("The disposition of the child or any evidence given by the child in the juvenile court shall not be admissible as evidence against the child in any case or proceeding.").

[3] *Darveaux* held that a misdemeanor shoplifting conviction is inadmissible under Minn. R. Evid. 609(a)(2), which permits evidence that a witness has been convicted of a crime involving dishonesty or a false statement, regardless of the punishment. 318 N.W.2d at 48. Here, the district court apparently applied rule 609(a) when it reasoned that J.M.'s thefts were inadmissible because they were misdemeanors that did not result in a

10

the district court did not abuse its discretion by precluding cross-examination about that incident.

While the license plate theft more easily fits into a dishonest act, we conclude that it had little probative value in informing the jury about J.M.'s propensity for truthfulness regarding her testimony about Michalec's criminal sexual conduct. Therefore, the district court did not clearly abuse its discretion by prohibiting cross-examination about this theft.

### Lifetime Conditional Release

Michalec finally argues that his conditional-release period must be reduced to 10 years because his third-degree criminal-sexual-conduct conviction does not result in a lifetime conditional release. Subsequent to briefing, the Minnesota Supreme Court issued *State v. Nodes*, 863 N.W.2d 77 (Minn. 2015). Nodes had pleaded guilty to two counts of criminal sexual conduct arising from separate behavioral incidents and involving separate victims. *Id.* at 78. The supreme court explained that:

> [u]nder the statutory definition, an offender has a "prior sex offense conviction" if the offender was convicted of committing a sex offense before the offender has been convicted of the present offense, regardless of whether the offender was convicted for the first offense before the commission of the present offense, and the convictions involved separate behavioral incidents. By contrast, the definition of the phrase "previous sex offense conviction" requires that the offender be "convicted and sentenced for a sex offense before the commission of the present offense."

---

conviction. However, the exclusion of these thefts under rule 609(a) does not prohibit rule 608(b) from applying.

*Id.* at 80 (quoting Minn. Stat. §609.3455, subd. 1(f),(g)). The supreme court held "that the definition of 'prior sex offense conviction' in Minn. Stat. § 609.3455, subd. 1(g), unambiguously includes a conviction for a separate behavioral incident entered before a second conviction, whether at different hearings or during the same hearing." *Id.* at 82.

Here, Michalec was convicted of two separate counts of criminal sexual conduct that involved two separate behavioral incidents. Although the counts involved very similar conduct and the same victim, this does not distinguish his case from *Nodes*. Therefore, under *Nodes*, Michalec was properly sentenced to a lifetime conditional-release period.

**Affirmed.**