**STATE of Minnesota, Respondent,**

v.

**Larry Lee STOFFLET, Appellant.**

No. 47591.

Supreme Court of Minnesota.

June 8, 1979.

C. Paul Jones, Public Defender, and J. Christopher Cuneo, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., and Craig Forsman, Special Asst. Atty. Gen., St. Paul, Richard T. Jessen, County Atty., Foley, for respondent.

## OPINION

ROGOSHESKE, Justice.

Defendant was found guilty by a district court jury of criminal sexual conduct in the third degree. Minn.St. 609.344(c) (using force or coercion to accomplish sexual penetration). He was sentenced by the trial court to a 10-year term. Defendant's direct appeal was stayed so he could petition for postconviction relief. When that petition was denied, defendant combined an appeal

from that order with the reinstated direct appeal. Defendant raises two issues: (1) whether, notwithstanding his failure to object at trial, he should receive a new trial on the ground that the prosecutor in his closing argument referred to evidence impeaching a defense witness when that evidence, although it existed and would have been admissible, was never offered or admitted, and (2) whether the district court erred in denying a motion for a so-called *Schwartz* hearing to examine a juror about possible bias toward defense counsel because of a prior feud which defense counsel failed to remember until after the guilty verdict was reached. We affirm.

The complainant in this case was a 17-year-old girl, who testified that after a dance she and a girl friend went to an isolated place along a rural road with an acquaintance named John DeMarais and several male friends of his, including defendant. She testified that she voluntarily had sexual intercourse with DeMarais but that afterwards defendant and two of the other men forcibly had sexual intercourse with her. The complainant's testimony was corroborated by her girl friend, who testified that she too was threatened with rape if she interfered, testimony that complainant promptly complained to her mother and to the sheriff, and the fact that the men disabled the girls' car.

At trial defendant testified that the complainant consented to have sexual intercourse with him and the others. DeMarais corroborated this testimony. Defense counsel, at the conclusion of his direct examination of DeMarais, asked if it was true that he "didn't tell him [Deputy Sheriff Wippler] exactly what you told us here." DeMarais said, "Right," explaining that the reason he did not was "I felt it was no real need where I should tell him what happened." Deputy Wippler had already testified during the state's case-in-chief but had not been questioned by the prosecutor as to the significant details of DeMarais' prior statement. Both the prosecutor and defense counsel had a summary of DeMarais' oral statement prepared by Wippler, which indicated that when questioned by Wippler De-

Marais had made a number of statements inconsistent with his trial testimony on direct. Basing his cross-examination on this summary, the prosecutor questioned DeMarais about the prior statement and these inconsistencies. DeMarais admitted having made some of the prior statements. However, asked if he recalled saying that he heard the complainant say "leave me alone" and "don't do that," DeMarais replied that he had made no such statement. He also denied having told Wippler that complainant's girl friend was crying and screaming to leave complainant alone.

In closing argument the prosecutor, although he had never called Wippler to testify and provide extrinsic evidence of the prior inconsistent statements, did not confine his comments to the inconsistencies DeMarais admitted but also referred to the inconsistencies DeMarais denied. Rather than object to these statements as not being based on the evidence, defense counsel responded to them in his closing statement.

After the jury returned the guilty verdict, defense counsel sought a *Schwartz* hearing to examine one of the jurors about possible bias. The request was based upon a feud which defense counsel had previously had with the juror but failed to remember until the trial was over. This feud apparently occurred about a year earlier and related to defense counsel's management of an amateur hockey club. There is no transcript of voir dire because the questioning of jurors was not reported and there is disagreement over what questions were asked.

■ 1. This is not a case in which the prosecutor's cross-examination of a defense witness about prior inconsistent statements was unjustified. The cross-examination was based entirely on a summary Wippler had made of his conversation with DeMarais. Although it is sometimes stated that a prosecutor commits misconduct if he cross-examines a defense witness about a prior inconsistent statement and then fails to produce extrinsic evidence of that statement, the more correct statement of the

rule focuses on whether the prosecutor *is able* to produce extrinsic evidence of the prior statement. Whether cross-examination concerning a prior inconsistent statement is justified turns on whether the question is based on evidence or is simply an attempt by the prosecutor to utilize innuendo. This point is made clear by Rule 613, Rules of Evidence, which, although not yet effective at the time of this trial, nonetheless merits consideration. Rule 613 provides as follows:

"(a) In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown nor its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel.

"(b) Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded a prior opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in rule 801(d)(2)."

As the Federal advisory committee's notes to the corresponding Federal rule make clear, it is the first part of the rule which, by providing for disclosure to counsel, "protect[s] against unwarranted insinuations that a statement has been made when the fact is to the contrary." In this case the prosecutor was able to produce extrinsic evidence to back up his questions on cross-examination, although he did not; and such evidence had been disclosed to defense counsel. Defendant cannot complain that the prosecutor did not introduce the extrinsic evidence but instead accepted his answer. See, 3A Wigmore, Evidence (Chadbourn Rev.) § 1023. In fact, a defendant is in a better position if the prosecutor does not introduce the extrinsic evidence.

■■ Thus, the real issue in this case is not whether the prosecutor erred in cross-examining DeMarais about the prior inconsistent statements to Wippler. Indeed, the prosecutor was perfectly justified in cross-

examining him about these statements. The problem arose when the prosecutor, not having called Wippler to testify about the prior statements, spoke in his closing argument as if Wippler had testified about the prior statements. This was error. The rule is that a prosecutor should not base his argument on facts not in evidence. The question remaining is whether the defendant is entitled to a new trial on this ground.

■ We conclude that a new trial is not warranted. First, this is not a case in which the prosecutor's statement had no basis in fact. If the prosecutor had not made the mistake of failing to recall Wippler, the statement would have been a proper one based on the evidence. Moreover, it appears likely that at a retrial, assuming DeMarais were called, the same mistake would not be made again. Defendant would be forced to choose between calling DeMarais, despite his likely impeachment, or not calling DeMarais and thereby losing an important witness.

Second, defense counsel did not object to the prosecutor's closing argument or seek curative instructions. If he had called the matter to the court's attention, he would have been entitled to a ruling sustaining the objection and an instruction that the jury ignore the statement because there was no evidence to support it. If a defendant is permitted to allow an error of this nature to pass without objection and then later use it as a basis for new trial, he will be encouraged to forego objection, knowing that if he is convicted he can raise the issue subsequently and possibly obtain a new trial and acquittal. Such a rule would foster abuse of the judicial system.

Third, our review of the record indicates that the jury probably would have discredited DeMarais' testimony, even if the prosecutor had not said what he did in closing argument. Moreover, the state's evidence was strong enough to permit the conclusion that it is unlikely that the error played a significant role in influencing the jury to convict. There was absolutely no issue of identification, only of consent. Complainant's testimony was corroborated by her

friend, by her prompt complaint, and by the fact that the men had disabled the car the girls were driving. Further, the defense version of what happened strains credulity. Under all these circumstances, we conclude that a new trial is not mandated.

2. Defendant's second contention is that the district court erred in denying his request for a *Schwartz* hearing to examine a juror about her possible bias toward defense counsel because of a prior feud over defense counsel's management of an amateur hockey club. In *Schwartz v. Mpls. Suburban Bus Co.*, 258 Minn. 325, 328, 104 N.W.2d 301, 303 (1960), we outlined procedures to be followed when a party seeks to impeach a verdict. Rule 26.03, subd. 19(6), Rules of Criminal Procedure, adopts the procedures outlined in *Schwartz.* This rule states:

> "Affidavits of jurors shall not be received in evidence to impeach their verdict. If the defendant has reason to believe that the verdict is subject to impeachment, he shall move the court for a summary hearing. If the motion is granted the jurors shall be interrogated under oath and their testimony recorded."

At common law the general rule in Minnesota was to disallow juror testimony or affidavits to impeach a verdict. There were exceptions, however, including "when there was some indication that a juror gave false answers on voir dire which concealed prejudice or bias toward one of the parties and thereby deprived that party of a fair trial."[1] Note, 4 Wm. Mitchell L.Rev. 417, 432.

The best argument in favor of a hearing is that such hearings should be liberally granted. *Olberg v. Minneapolis Gas Co.*, 291 Minn. 334, 343, 191 N.W.2d 418, 425 (1971). Since only one juror was involved, it probably would not have taken much of the court's time to hold such a hearing. The focus of the examination would probably not have been on the deliberations of the jurors but on the particular juror's feelings about defense counsel and whether it was likely that those feelings, if negative, prejudiced defendant.

Numerous decisions of this court have indicated, however, that the trial court exercises fairly broad discretion in determining whether to grant a *Schwartz* hearing. See, e.g., *Zimmerman v. Witte Transp. Co.*, 259 N.W.2d 260 (Minn.1977). Here it was clearly within defense counsel's power to prevent the person in question from serving on the jury. In fact, he testified that when he first saw her at voir dire he thought he recognized her but could not quite place her. This being so, it would seem he had some obligation to interrogate her carefully to determine whether he had had prior contact with her. Also, to ensure preserving his right to challenge a juror's failure to answer a question accurately at voir dire, defense counsel should insist on the presence of the reporter. We have no record of the voir dire; defense counsel cannot even say for sure that he questioned the jurors about whether they knew him. The prosecutor testified that the only question asked was whether any of the jurors had done any business with defense counsel's law office. Under these circumstances—and since it is questionable whether a juror would penalize a defendant simply because of a bad prior experience with defense counsel—we conclude that the trial

---

[1] It appears that while Rule 606, Rules of Evidence, not applicable in this case, changes some of the exceptions to the common-law rule, it does not change this exception. Note, 4 Wm. Mitchell L.Rev. 417, 435. Rule 606 provides in relevant part:

"(b) Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes."

court did not abuse its discretion in refusing to grant the *Schwartz* hearing.

Affirmed.