STATE of Minnesota, Respondent,

v.

Gale Allen RACHUY, Appellant,

Nos. C7–81–278, C7–81–409 and C1–82–1565.

Supreme Court of Minnesota.

June 8, 1984.

C. Paul Jones, State Public Defender, Elizabeth B. Davies, Asst. Public Defender, Law Center, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis County Atty., John E. DeSanto, Asst. County Atty., Duluth, for respondent.

WAHL, Justice.

Petitioner was charged by indictment in St. Louis County with two counts of theft

based on the same behavioral incident: count I, theft by false representation, and count II, theft by swindle, Minn.Stat. § 609.52, subd. 2(3, 4) (1982). A district court jury found him guilty of both counts. The trial court sentenced petitioner on count II to 5 years in prison [1] and adjudicated him guilty only of that offense. This appeal is from an order of the district court denying a petition for post-conviction relief in the form of an outright reversal of the conviction or a new trial. Petitioner contends on appeal (1) that his conviction should be reversed outright on the ground that the evidence failed to establish that he had any intent to defraud, or (2) that he should be given a new trial because (a) the trial court erred in admitting evidence suggesting petitioner's involvement in another crime, (b) the trial court erred in denying a post-trial request for a *Schwartz* hearing to establish the bias of one of the jurors, and (c) two of the four convictions which would have been used to impeach his credibility if he had testified were reversed following his trial in this case. We affirm.

■ 1. Petitioner's first contention is that the evidence was insufficient to establish the intent element of the crime of theft. The state's evidence indicated that after learning that the complainant in this case, Robert Wait, wanted to buy 16-foot logs for a log home he was planning to build, petitioner contacted Wait and said that he could supply the logs. The price petitioner requested was considerably less than Wait had paid for 16-foot logs that he had purchased previously. At petitioner's request, Wait paid for the logs before delivery. Wait did not find the logs when he went to the place in the woods to which petitioner had directed him, the place where the logs were supposedly located. Later that day, Wait went to the jail where petitioner was being detained on another charge, and confronted him. Petitioner initially feigned ignorance of Wait's identity and of the deal, then claimed that the logs

were where he said they were. The state's evidence established that petitioner never had any 16-foot logs. In *State v. Ruffin*, 280 Minn. 126, 130, 158 N.W.2d 202, 205 (1968), we stated that the theft statute "punishes any fraudulent scheme, trick, or device whereby the wrongdoer deprives the victim of his money or property by deceit or betrayal of confidence." We hold that the evidence in this case, while not overwhelming, was sufficient to establish that petitioner intended to defraud the complainant.

2. Petitioner makes three separate arguments in support of his contention that he should at least be given a new trial:

■ (a) He argues first that the trial court erred in permitting the prosecutor to elicit on redirect examination of Robert Wait that the conversation he had in which petitioner feigned ignorance of the deal occurred in jail. Petitioner's attorney moved *in limine* for an order barring the prosecutor from eliciting evidence that petitioner was in jail at the time of this conversation. The court granted the motion but stated that if defense counsel on cross-examination tried to take advantage of the fact that Wait could not mention that the conversation occurred in jail, he would let the prosecutor elicit the suppressed evidence. During cross-examination of Wait defense counsel asked a series of questions relating to Wait's failure to expressly demand that petitioner refund his money. The prosecutor then obtained the trial court's permission to ask Wait on redirect why he had not demanded a refund when he talked with petitioner. Wait testified that he did not ask petitioner for the money because petitioner was in jail at the time and he did not think that petitioner had any money on him or any way to get it. By cross-examining Wait as he did about Wait's failure to ask petitioner for a refund, defense counsel "opened the door."

---

1. The court sentenced petitioner to the statutory term rather than the presumptive sentence because the offense was committed in April of 1980, before the Guidelines became effective.

In 1982 petitioner was resentenced to the presumptive sentence of 32 months pursuant to section 590.01, subd. 3.

In deciding whether to allow the prosecutor to elicit the evidence on redirect, the trial court had to balance the need to rebut the impression left by the cross-examination with the risk that the evidence to be elicited would unfairly prejudice the petitioner. We hold that the trial court did not abuse its discretion in permitting the prosecutor to elicit this evidence. *State v. Edwards*, 343 N.W.2d 269 (Minn.1984); *State v. Gardner*, 328 N.W.2d 159 (Minn.1983); *State v. Jones*, 329 N.W.2d 832 (Minn. 1983); *State v. Waddell*, 308 N.W.2d 303 (Minn.1981); *State v. McCullum*, 289 N.W.2d 89 (Minn.1979); *State v. Fossen*, 282 N.W.2d 496 (Minn.1979).

■ (b) Petitioner's next contention is that (i) the trial court erred in failing to order a *Schwartz* hearing to investigate his *pro se* complaint about one of the jurors and (ii) the post-conviction court also erred in failing to order a *Schwartz* hearing on the basis of petitioner's testimony at the post-conviction hearing. In a *pro se* motion for a new trial petitioner stated that he had learned after trial that "one of the juror's sons had been formerly employed" by him and had been fired for drunkenness. The prosecutor, in arguing that a *Schwartz* hearing should be denied, stated that petitioner had not come forth with any evidence that any of the jurors had answered falsely at *voir dire* when they were asked if any of them knew petitioner. The trial court denied the motion. At the post-conviction hearing petitioner testified that the juror whom he suspected of being biased against him was the father of a former employee, whom he had fired in 1978 or 1979. Petitioner testified that at *voir dire* —of which there was no record—the juror in question said that petitioner looked "awful familiar" and that he knew petitioner from some place. The record indicates that petitioner had a peremptory challenge left but did not use it on this juror. Petitioner testified that after the trial his wife was going through cancelled checks in connection with another case and ran across checks with the juror's son's name on them. Petitioner testified that this triggered his memory of the firing and of the

fact that the juror in question had been employed as a guard at the work farm to which petitioner, who was 30-years-old at the time of trial, had been sent as a juvenile.

In *State v. Stofflet*, 281 N.W.2d 494 (Minn.1979), we upheld the refusal of the trial court to conduct a post-trial *Schwartz* hearing to examine one of the jurors about possible bias toward defense counsel because of a prior feud over defense counsel's management of an amateur hockey club. We stated:

In *Schwartz v. Mpls. Suburban Bus Co.*, 258 Minn. 325, 328, 104 N.W.2d 301, 303 (1960), we outlined procedures to be followed when a party seeks to impeach a verdict. Rule 26.03, subd. 19(6), Rules of Criminal Procedure, adopts the procedures outlined in *Schwartz*. This rule states:

> "Affidavits of jurors shall not be received in evidence to impeach their verdict. If the defendant has reason to believe that the verdict is subject to impeachment, he shall move the court for a summary hearing. If the motion is granted the jurors shall be interrogated under oath and their testimony recorded."

At common law the general rule in Minnesota was to disallow juror testimony or affidavits to impeach a verdict. There were exceptions, however, including "when there was some indication that a juror gave false answers on voir dire which concealed prejudice or bias toward one of the parties and thereby deprived the party of a fair trial." Note, 4 Wm. Mitchell L.Rev. 417, 432.

The best argument in favor of a hearing is that such hearings should be liberally granted. *Olberg v. Minneapolis Gas Co.*, 291 Minn. 334, 343, 191 N.W.2d 418, 425 (1971). Since only one juror was involved, it probably would not have taken much of the court's time to hold such a hearing. The focus of the examination would probably not have been on the deliberations of the jurors but on the

particular juror's feelings about defense counsel and whether it was likely that those feelings, if negative, prejudiced defendant.

Numerous decisions of this court have indicated, however, that the trial court exercises fairly broad discretion in determining whether to grant a *Schwartz* hearing. *See, e.g., Zimmerman v. Witte Transp. Co.,* 259 N.W.2d 260 (Minn. 1977). Here it was clearly within defense counsel's power to prevent the person in question from serving on the jury. In fact, he testified that when he first saw her at voir dire he thought he recognized her but could not quite place her. This being so, it would seem he had some obligation to interrogate her carefully to determine whether he had had prior contact with her. Also, to ensure preserving his right to challenge a juror's failure to answer a question accurately at voir dire, defense counsel should insist on the presence of the reporter. We have no record of the voir dire; defense counsel cannot even say for sure that he questioned the jurors about whether they knew him. The prosecutor testified that the only question asked was whether any of the jurors had done any business with the defense counsel's law office. Under these circumstances—and since it is questionable whether a juror would penalize a defendant simply because of a bad prior experience with defense counsel—we conclude that the trial court did not abuse its discretion in refusing to grant the *Schwartz* hearing.

281 N.W.2d at 498. Based on *Stofflet,* we affirm the trial court's refusal to grant a *Schwartz* hearing and the post-conviction court's refusal to order the trial court to hold a *Schwartz* hearing.

■ (c) Petitioner's final contention is that he should be granted a new trial because the post-conviction court reversed two of the four convictions that would have been used to impeach his credibility had he testified. Petitioner bases this contention on his post-conviction hearing testimony that if the trial court had suppressed these two convictions he would have testified.

Minn.R.Evid. 609, which deals with the use of prior convictions to impeach the credibility of a witness, provides in part (e) that "The pendency of an appeal therefrom does not render evidence of a conviction inadmissible. Evidence of the pendency of an appeal is admissible." Professors Louisell and Mueller, in their treatise of the federal rules, state in conclusory fashion that a subsequent reversal of a conviction used to impeach a defendant or other witness should not be a basis for granting a defendant a new trial. 3 D. Louisell and C. Mueller, *Federal Evidence* § 323 at 375 (1979). However, other commentators argue that the subsequent reversal of such a conviction can be a basis for the granting of a new trial in an appropriate case. *See,* Note, *Impeachment of Witnesses by Prior Conviction Pending Appeal,* 46 U.Chi.L. Rev. 499 (1979).

A case might arise in which we would conclude that a new trial was required because the defendant was impeached by a conviction later reversed on appeal or because the defendant chose not to testify rather than be impeached by a conviction later reversed on appeal. This, however, is clearly not such a case. Although petitioner testified at the post-conviction hearing that he would have testified if the trial court had ruled that those two convictions could not be used to impeach his credibility, petitioner apparently did not ask the post-conviction court to make a finding to this effect. The record made at trial strongly suggests that petitioner still would not have testified, because his counsel expressly stated that he was going to recommend that petitioner not testify unless the trial court suppressed three of the four convictions which the state wanted to use to impeach petitioner's credibility if he testified. Further, even if we were to assume that petitioner would have testified, we would not reverse on this ground, because petitioner still would have been impeached by at least two of his prior convictions. The record does not indicate what petitioner's testimony would have been. Nonetheless, it is highly likely that the jury, know-

ing that petitioner had been convicted twice before, would have been reluctant to credit petitioner's testimony.

Affirmed.