**STATE of Minnesota, Respondent,**

v.

**Charles Alfred BEER, Appellant.**

**No. C5–83–882.**

Supreme Court of Minnesota.

May 17, 1985.

C. Paul Jones, Public Defender, Ann Remington, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Michael K. Jordan, Asst. Atty. Gen., St. Paul, Paul G. Morreim, Freeborn Co. Atty., Albert Lea, for respondent.

COYNE, Justice.

Defendant appeals from judgment of conviction of criminal sexual conduct in the third degree, Minn.Stat. § 609.344(c) (1982), raising two issues: (1) whether his conviction should be reversed outright because the evidence of his guilt was legally insufficient or (2) whether he should be given a new trial because of jury irregularities.[1] We affirm.

1. Defendant's first contention, that his conviction should be reversed outright because the evidence of his guilt was

---

1. Defendant was sentenced by the trial court to an executed term of 49 months in prison, which is the presumptive sentence for the offense (a severity level VII offense) by a person with defendant's criminal history score (three). While this appeal was pending, defendant moved for modification of sentence, arguing that the trial court erred in failing to consider information suggesting that defendant was particularly amenable to probation. The trial court modified this sentence by staying execution of it, thereby resulting in the release of defendant from prison. The Court of Appeals granted a writ prohibiting the trial court from enforcing the order, ruling that the Rules of Criminal Procedure do not give the trial court authority to modify a sentence that the defendant is already serving. The court stated, however, that the relief granted could be granted in a postconviction proceeding pursuant to Minn.Stat. § 590.01 et seq. (1982). Defendant then obtained a stay of this appeal and a remand for a postconviction proceeding, and the trial court granted the petition and modified defendant's sentence.

legally insufficient, is without merit. Defendant arranged with the parents of the victim, a 22-year-old woman, to give her a ride from her place of employment in Albert Lea to her parents' farmhouse on the afternoon of September 13, 1982. Instead of driving her home, he drove her to a number of other places, including bars, where he talked with acquaintances. Then, after several hours of this, he drove her to a secluded gravel pit where he forced her to submit to sexual intercourse. After the offense he did not take her home but dropped her off in Albert Lea. She immediately reported the incident to a friend and to the police. A sexual assault examination corroborated her claim of recent intercourse. Defendant claimed that the intercourse was consensual, but the jury was not obliged to credit his testimony, particularly in view of the strong evidence corroborating the victim's testimony. The corroborating evidence included testimony that the victim was very upset and distraught when she reported the offense and testimony by the police that when they arrested defendant they observed marks on his forehead consistent with the victim's testimony that she hit him during the incident.

■ 2. The second issue is whether the trial court erred in refusing to order a new trial after conducting a post-trial hearing into jury irregularities.

During voir dire the trial court asked the 21 panel members a number of questions including the following:

> Now, this next question is rather sensitive, and I ask you to be candid, though, and answer this question: Are there any of you, any members of your family, I am talking about brothers, sisters, children, grandparents, whatever, those members of your family or very close friends or members of their families who have ever been involved in a criminal sexual conduct act, either as the victim or as the perpetrator? Now, in the old days, criminal sexual conduct was known as rape, so when I talk about criminal sexual conduct, if the term rape comes to mind, then respond to this. Do any of you know anyone close who has ever been assaulted, criminally, sexually, or raped? Okay. I trust that none of you have ever known anyone closely that has been involved as a victim in this kind of a situation.

None of the panel members responded affirmatively.

Following trial, defense counsel notified the trial court that one of the jurors had told someone, who in turn had told defendant, that one of the two female jurors said during deliberations that she once had been sexually assaulted. The trial court ordered a so-called *Schwartz* hearing.[2]

All twelve jurors testified at the hearing. The juror in question testified that a number of years earlier an older relative had put his hand on her knee when he was teaching her how to drive, that she had told him to leave her alone, and that that ended the matter. She denied that he had "molested" her and said she did not recall mentioning the incident during jury deliberations. She testified that she did not bring up the incident during voir dire because she felt that the court's question had related to sexual intercourse. She testified that the incident did not cause her to be prejudiced against defendant.

Five of the jurors testified that the juror in question alluded to the incident during deliberations. They agreed that the incident was not discussed in detail. All five testified that the incident had no effect on the verdict. The remaining six jurors testified that they had no recollection of hearing the juror make the comment or of hearing anyone else discuss it.

At common law in Minnesota juror testimony or affidavits generally were not allowed to impeach a verdict but there were exceptions, including when it appeared that a juror gave false answers on voir dire that

---

**2.** Named after *Schwartz v. Minneapolis Suburban Bus Co.,* 258 Minn. 325, 104 N.W.2d 301 (1960).

concealed bias or prejudice toward one of the parties. *State v. Stofflet,* 281 N.W.2d 494, 498 (Minn.1979). Minn.R.Evid. 606(b) provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

This rule was not intended to change the common-law exception referred to in *Stofflet,* 281 N.W.2d at 498, n. 1. Accord, *Rushen v. Spain,* 464 U.S. 114, 104 S.Ct. 453, 457, n. 5, 78 L.Ed.2d 267 (1983); 3 D. Louisell & C. Mueller, *Federal Evidence* § 290 (1979); 3 J. Weinstein & M. Berger, *Weinstein's Evidence* § 606[04] (1982).

The post-trial questioning of the juror in question established that she did not lie at voir dire. The trial court at voir dire used the term "criminal sexual conduct," a legal term that probably is not clearly understood by most jurors. The court then gave a short-hand definition of the term, saying basically that it meant rape. The juror's failure to raise her hand at that point is not indicative of deception on her part since the trial court's inquiry was limited to rape. Indeed, technically, the juror would not have had to respond even if the trial court had read the statutory definition of "sexual contact" and asked if anyone had been, or knew anyone who had been, victimized in that way. "Sexual contact" is defined in section 609.341, subd. 11, as involving the touching of "intimate parts." One's knee is not an "intimate part," as that term is defined in subdivision 5. The touching of the juror's knee may well have been sexually motivated and may well have constituted "molestation" as the word is sometimes loosely used, but it was not criminal sexual conduct under our statutory definition.

We are also satisfied that the questioning of the jurors did not establish either that the juror in question was prejudiced against defendant or that she improperly brought extraneous prejudicial information to the attention of the other jurors. The juror's answers to the trial court's questions established that she was not prejudiced. While defense counsel might have exercised one of his peremptory challenges to strike her if he had known of the incident, he did not ask the right question at voir dire to elicit that information. The questioning of the other jurors similarly did not establish that the juror improperly brought extraneous prejudicial information to the other jurors during deliberations. The comment did not relate to defendant but related to an experience that the juror had as a teenager. It was a passing comment that told the jury nothing about defendant and was not intended as an argument in favor of finding defendant guilty.[3]

Affirmed.

---

**3.** We note, in the interest of preventing future error, that the trial court should not have asked the jurors whether the juror's comment had any effect on the verdict. As stated in *State v. Hill,* 287 N.W.2d 918, 921 (Minn.1979), "[T]he rule is clear that even though the jurors may testify concerning the improper [information], they may not testify concerning the effect[s] [it] had on their minds." The proper procedure is for the trial court to estimate the "probable effect" of the prejudicial information on a "hypothetical average jury." *State v. Cox,* 322 N.W.2d 555, 559 (Minn.1982). Relevant factors to be considered in doing this include: "The nature and source of the prejudicial matter, the number of jurors exposed to the influence, the weight of evidence properly before the jury, and the likelihood that curative measures were effective in reducing the prejudice." *Id.* Any error in questioning the jurors about the effect of the statement on their minds, however, clearly did not prejudice defendant, since the answers led to the same conclusion that would have obtained by using the procedures specified in *Cox.*