*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1544**

State of Minnesota,
Respondent,

vs.

Corey Vern Schmidt,
Appellant.

**Filed August 17, 2015
Affirmed
Reyes, Judge**

Stearns County District Court
File No. 73CR143021

Lori Swanson, Attorney General, Angela Behrens, Assistant Attorney General, St. Paul, Minnesota; and

Janelle Kendall, Stearns County Attorney, St. Cloud, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara L. Martin, Assistant State Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Larkin, Presiding Judge; Rodenberg, Judge; and

Reyes, Judge.

UNPUBLISHED OPINION

**REYES**, Judge

On appeal following his conviction for second-degree possession of a controlled substance and obstruction of the legal process, appellant Corey Vern Schmidt argues that (1) the evidence was insufficient to prove that he possessed methamphetamine and (2) he was deprived of a fair trial by the prosecutor's closing argument. We affirm.

## FACTS

In April 2014, three St. Joseph police officers entered the convenience store of a local gas station. While the officers were inside, appellant Corey Vern Schmidt also entered the store. Officer Manderscheid recognized Schmidt and radioed dispatch to run a warrant check on him. Upon learning that Schmidt had an active warrant, Officer Manderscheid placed a hand on Schmidt's left arm and informed him that he was under arrest. Schmidt pulled away from Officer Manderscheid and ran out the front door. Officers Manderscheid and Haugen pursued Schmidt northwest across the gas-station parking lot, while Sergeant Pfannenstein left through a separate exit door.

While running from the officers, Schmidt lost his sandals, tripped, and fell to the ground near the northernmost gas pumps. Officers Manderscheid and Haugen quickly got on top of Schmidt and arrested him. Sergeant Pfannenstein, who exited the store last, arrived at the group after the other two officers were on top of Schmidt. As he approached, Sergeant Pfannenstein discovered a child-sized sock on the ground next to the area where Schmidt had been subdued. Sergeant Pfannenstein later testified that because of the number of people on the ground, he could not see the sock until the people

2

stood up. Officer Manderschied testified that the sock was found on the ground approximately five feet from where Schmidt was arrested.

Inside the sock, Sergeant Pfannenstein found two baggies containing a total of 16 grams of methamphetamine and a third baggie containing smaller plastic baggies. As Sergeant Pfannenstein examined the contents of the sock, the other officers began escorting Schmidt to their squad car. From about ten feet away, Schmidt watched Sergeant Pfannenstein remove the items, remarked that "it was not his meth," and asserted that the officers could not charge him because it was not in his possession. Officer Manderschied searched Schmidt after the arrest and found a lighter, two cell phones, a small amount of marijuana and a marijuana pipe. Schmidt was transported to the Sterns County Jail.

At the jail, Schmidt waived his right to counsel and provided a statement to the officers. In the statement, Schmidt asserted that the methamphetamine could not be his because the officers tackled him in the middle of the parking lot, "[f]ar away from the pumps." When it was suggested that Schmidt threw the sock while he was running, Schmidt responded, "I was not able to do anything of the such. You [would have] clearly seen me doing anything of that type." Schmidt was charged with second-degree possession of a controlled substance, fleeing a police officer, and obstructing legal process. Schmidt pleaded guilty to fleeing a police officer but had a jury trial on the remaining counts. At trial, the jury heard testimony from Officer Manderscheid, Sergeant Pfannenstein, and a forensic scientist. The forensic scientist testified that she

unsuccessfully tested the bag containing the smaller plastic baggies for latent fingerprints.[1]  No DNA testing occurred.

The jury also heard Schmidt's statement to the police and viewed surveillance footage and still photographs taken from the gas station.  Both officers testified that they did not see Schmidt throw anything during the foot chase.  Officer Manderscheid explained that he did not noticed Schmidt's arms during the chase because he had "tunnel vision" and was focused on placing Schmidt in custody.  After reviewing the surveillance video and photos, the officers admitted that the video and photos were grainy.

The jury found Schmidt guilty of second-degree possession of a controlled substance and obstructing legal process.  The court sentenced him to 88 months, and this appeal followed.

## D E C I S I O N

Schmidt argues that (1) the evidence was insufficient to prove that he possessed methamphetamine and (2) he was deprived of a fair trial due to the prosecutor's closing argument.

### I.      Sufficiency of the evidence

When reviewing the sufficiency of the evidence, an appellate court considers whether the legitimate inferences drawn from the evidence in the record would permit a reasonable jury to conclude that the defendant was guilty beyond a reasonable doubt. *State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012).  In doing so, the court views the evidence in the light most favorable to the verdict.  *Id*. at 874.  We must assume "the jury

---

[1] The other two baggies containing the methamphetamine were not tested for fingerprints.

believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). We will not disturb the verdict if the jury could reasonably conclude the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

To obtain a conviction for possession of a controlled substance, the state must prove that the defendant possessed the substance and knew the nature of the substance. *State v. Florine*, 303 Minn. 103, 104, 226 N.W.2d 609, 610 (1975). Schmidt challenges only the possession element, and the parties agree that this is a constructive-possession case because the drugs were found on the ground. Constructive possession occurs when a strong inference exists "that the defendant at one time physically possessed the substance and did not abandon his possessory interest in the substance but rather continued to exercise dominion and control over it up to the time of the arrest." *Id*. at 105, 226 N.W.2d at 610. In order to prove constructive possession, the state must show

> (a) that the police found the substance in a place under defendant's exclusive control to which other people did not normally have access, or (b) that, if police found it in a place to which others had access, there is a strong probability (inferable from other evidence) that defendant was at the time consciously exercising dominion and control over it.

*Id*. at 105, 226 N.W.2d at 611. Here, the parties agree that the methamphetamine was found in a place to which others had access.

The parties also agree that the conviction is based upon circumstantial evidence because it is based on an inference. An appellate court applies heightened scrutiny when reviewing a verdict based on circumstantial evidence. *Pratt*, 813 N.W.2d at 874.

5

Minnesota courts employ a two-step process when reviewing convictions based on circumstantial evidence. *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010). First, the reviewing court identifies the circumstances proved. *Id.* This court defers to the fact-finder's acceptance and rejection of proof and to its credibility determinations. *Id.* Second, we examine the reasonableness of the inferences that can be drawn from the circumstances proved, including inferences of innocence as well as guilt. *Id.* All of the circumstances proved must be consistent with guilt and inconsistent with any other rational hypothesis negating guilt. *Id.* at 330. We do not, however, defer to the fact-finder's choice between rational hypotheses. *Id.* at 329-30. Appellate courts "view the circumstantial evidence as a whole, not as isolated facts." *State v. Hurd*, 819 N.W.2d 591, 599 (Minn. 2012). And the "[s]tate does not have the burden of removing all doubt, but of removing all reasonable doubt." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010).

Here, the circumstances proved are: (1) Schmidt had an active arrest warrant; (2) Schmidt fled when officers tried to arrest him; (3) Schmidt tripped and fell near a gas pump; (4) there was nothing on the ground before Schmidt fell;[2] (5) after Schmidt was

_____

[2] Schmidt argues that this circumstance was not proved. But the footage from the gas station's two surveillance cameras provided the jury with a before-and-after view of where Schmidt landed and where Officer Pfannenstein found the sock. One camera provides a wide-shot of all the pumps and captures the entire chase and retrieval of the sock. The other camera alternatively pans and zooms on each individual gas pump, including those at the northernmost end where the arrest and retrieval occurred. The footage does not reveal any items on the ground when the camera zooms in on the northernmost pumps. While Schmidt argues that this footage is "grainy" and "far from conclusive," it is an inference that supports the verdict, which the jury found convincing

6

arrested and placed on his feet, a sock filled with 16 grams of methamphetamine was found near the area where Schmidt fell; (6) Schmidt had numerous items in his pockets at the time of the arrest; (7) as the officers inspected the sock, Schmidt claimed "it was not his meth" and asserted that he could not be charged with its possession because it was not in his possession; (8) the officers did not see Schmidt throw the sock; and (9) the security footage does not show Schmidt throwing any items.

Schmidt argues that a rational hypothesis other than guilt exists—someone else dropped the sock containing methamphetamine at some point prior to Schmidt's arrest. But this hypothesis is inconsistent with the circumstances proved. The security footage revealed that there was nothing on the ground prior to Schmidt falling and no one was in that vicinity. Moreover, the sock was found approximately five feet from where Schmidt was tackled and "[p]roximity is an important factor in establishing constructive possession." *State v. Breaux*, 620 N.W.2d 326, 334 (Minn. App. 2001). While Schmidt attempts to disregard this fact by arguing that the "proximity" language in *Breaux* has only been applied to drugs found in vehicles or homes, nothing in *Breaux* or the cases Schmidt cites limits the consideration of proximity to only those scenarios. Additionally, Schmidt's own comment that "it was not his meth" further support the inference that Schmidt constructively possessed the methamphetamine. *See State v. Munoz*, 385 N.W.2d 373, 377-78 (Minn. App. 1986) (affirming conviction based on the sufficiency of evidence that included, among other factors, defendant's on-the-scene identification of a

and "we defer . . . to the jury's acceptance of the proof of these circumstances." *Stein*, 776 N.W.2d at 718.

substance that he denied possessing).  Simply put, Schmidt's hypothesis that it could be someone else's methamphetamine appears to be based on speculation and is not a rational hypothesis and therefore does not negate his guilt.  *See Andersen*, 784 N.W.2d at 330 (explaining that a rational hypothesis negating guilt must be based on more than mere conjecture or speculation).  Because sufficient evidence supports the jury's verdict that Schmidt constructively possessed the methamphetamine, we do not disturb the verdict.  *See Bernhardt*, 684 N.W.2d at 476-77.

## II.  Prosecutorial misconduct

Schmidt alleges that the prosecutor's closing argument deprived him of a fair trial by (1) improperly shifting the burden of proof; (2) belittling the defense; and (3) relying on facts that are not in the record.  Schmidt did not object to any part of the closing argument.  Allegations of unobjected-to prosecutorial misconduct are reviewed under a modified plain-error test.  *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006).  Under this test, an appellant must first establish that the prosecutor committed error that is plain.  *Id*.  Upon making this showing, the burden then shifts to the state to show that the error did not affect the defendant's substantial rights.  *Id*.  This requires a showing that "there is no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict."  *State v. Hohenwald*, 815 N.W.2d 823, 834 (Minn. 2012) (quotation omitted).  Even if the error affected an appellant's substantial rights, a new trial is only warranted if necessary to ensure the fairness and integrity of judicial proceedings.  *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998).

## A. Burden of proof

Schmidt argues that during closing arguments, the prosecutor improperly shifted the state's burden of proof by repeatedly asking the jury to choose between two competing versions of what happened and decide which is more reasonable. Schmidt argues that these remarks constitute error because they improperly encouraged the jury to choose the most reasonable explanation rather than ask whether the state had shown beyond a reasonable doubt that Schmidt constructively possessed the methamphetamine. We agree.

The supreme court has held that prosecutors misstate the burden of proof when they ask the jury to "weigh the story in each hand and decide which one is most reasonable, which one makes the most sense." *State v. Strommen*, 648 N.W.2d 681, 690 (Minn. 2002). During closing arguments, the prosecutor referred to Schmidt's version of the events as an "alternative reality" and urged the jury to ask "how reasonable is the alternative reality that they want to present to you which is pure coincidence." The prosecutor then asked the jury, "Does it really make sense that it was not his methamphetamine? Really? That's what your common sense and rational thought process will lead you to that's reasonable, that despite all the evidence to the contrary that's not his methamphetamine?" Because the prosecutor asked the jury to weigh the state's version of events against Schmidt's "alternative reality" and decide which one is reasonable, the prosecutor misstated the state's burden of proof and thus committed error that was plain. *See id.*

Although the prosecutor's comments constituted plain error, the state has shown that the error did not affect Schmidt's substantial rights. To determine whether Schmidt's substantial rights were affected, we consider (1) the strength of the evidence against the defendant; (2) the pervasiveness of the improper suggestions; and (3) whether the defendant had an opportunity to rebut the improper suggestions. *State v. Davis*, 735 N.W.2d 674, 682 (Minn. 2007).

The evidence that Schmidt constructively possessed the methamphetamine is strong. Although no DNA or latent fingerprints were retrieved from the bag, the testimony from the officers, Schmidt's own statements, combined with the footage from the surveillance video, all present a strong case. And while it is true that the evidence is circumstantial rather than direct, "[w]hen a defendant is convicted based on circumstantial evidence, the evidence is entitled to the same weight as any evidence so long as the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of guilt." *State v. Olhausen*, 681 N.W.2d 21, 26 (2004) (quotation omitted). Thus, there is strong evidence supporting Schmidt's conviction.

Next, the error does not appear to be so pervasive as to warrant a new trial. Misconduct is examined both individually and cumulatively to determine if it denied a defendant a fair trial. *State v. Dobbins*, 725 N.W.2d 492, 506 (Minn. 2006). As Schmidt has pointed out, the prosecutor made reference to an improper burden of proof on a number of occasions. However, the prosecutor correctly refers to the beyond-a-reasonable-doubt standard no less than nine times over the course of closing arguments.

10

And the district court itself reiterated the beyond-a-reasonable-doubt standard to the jury six times before the parties began closing arguments. "[A] prosecutor's attempts to shift the burden of proof are often nonprejudicial and harmless where . . . the district court clearly and thoroughly instructed the jury regarding the burden of proof." *State v. McDonough*, 631 N.W.2d 373, 389 n.2 (Minn. 2001). Accordingly, the error was not so pervasive that it affected Schmidt's substantial rights.

Lastly, any error occurred prior to Schmidt having an opportunity to rebut the error. The language Schmidt currently complains of all comes from the state's initial closing argument. Schmidt had an opportunity to use his own closing argument to rebut the state's references to the wrong burden-of-proof standard. Schmidt chose not to do so.

In sum, even though the prosecutor committed plain error by misconstruing the state's burden of proof, any such error did not affect Schmidt's substantial rights and a new trial is not warranted.

### B.    Belittling the defense

"[P]rosecutors must avoid inflaming the jury's passions and prejudices against the defendant." *State v. Bailey*, 677 N.W.2d 380, 404 (Minn. 2004). "The state has a right to vigorously argue its case, and it may argue in individual cases that the evidence does not support particular defenses. Further, the state's argument is not required to be colorless." *Davis*, 735 N.W.2d at 682 (citation omitted). However, in doing so the state may not belittle or denigrate the defense. *State v. MacLennan*, 702 N.W.2d 219, 236 (Minn. 2005). Whether a comment constitutes belittlement often depends on whether the prosecutor roots the argument in the evidence, rather than his or her own personal

11

opinion. *Compare State v. Vue*, 797 N.W.2d 5, 15 (Minn. 2011) (concluding that the suggestion that the jury would have to "believe the impossible" to accept the defendant's argument was not belittlement because the prosecutor highlighted evidence why the jury should reject the defendant's theory), *with State v. Porter*, 526 N.W.2d 359, 363 (Minn. 1995) (concluding that the prosecutor committed misconduct by arguing, "Do you believe that? If you do and this is over, I got a time share in Santa Claus's condo at the [N]orth [P]ole, and I will sell you some. You are not that big of suckers, and you know that").

Schmidt argues that the prosecutor disparaged the defense by referring to its theory as an "alternative reality" and arguing that believing it would mean a "meth fairy" must have produced the sock containing methamphetamine. We conclude that these comments were not aimed at disparaging the defense, but rather amounted to a vigorous argument from the facts in the record. Based on the circumstantial evidence that the sock containing methamphetamine was seen on the ground only after Schmidt fell and got on his feet, the prosecutor was trying to get the jury to infer that Schmidt constructively possessed the methamphetamine, the only reasonable explanation for its sudden appearance on the ground. The prosecutor made these comments in the context of responding to Schmidt's theory that he had nothing to do with the sock. *See MacLennan*, 702 N.W.2d at 236 ("As part of the state's right to vigorously argue its case, it may specifically argue that there is no merit to the particular defense."). Because the prosecutor's comments are more akin to those seen in *Vue*, 797 N.W.2d at 15, rather than those seen in *Porter*, 526 N.W.2d at 363, we conclude that no error occurred.

12

## C.     Facts not in record

A prosecutor commits misconduct by relying on facts not in evidence.  *State v. Stofflet*, 281 N.W.2d 494, 497 (Minn. 1979) (concluding that a prosecutor erred by addressing a witness's prior inconsistent statements when no one had testified to them). Schmidt argues that the prosecutor committed plain error by encouraging jurors to consider facts outside of the record and resolve unanswered questions in the state's favor. Specifically, Schmidt argues that the prosecutor committed misconduct by referencing non-existent DNA evidence and then asking the jury to infer that Schmidt's DNA would have been found on the sock if any testing took place.

This misconstrues the prosecutor's statements.  The prosecutor does not rely on non-existent DNA evidence to argue that the sock would contain Schmidt's DNA if tested.  Rather, the prosecutor simply discusses what the lack of DNA means—arguing that the failure to test the sock does not necessarily mean that Schmidt's DNA is not on it. It is clear that the prosecutor made this argument in anticipation of Schmidt's closing, which inevitably did highlight the lack of DNA evidence.  This is a legitimate form of argument.  *See State v. Smith*, 619 N.W.2d 766, 772 (Minn. App. 2000) ("A prosecutor may . . . make arguments in anticipation of the defense's closing arguments."), *review denied* (Minn. Jan. 16, 2001).  Thus, the prosecutor did not commit error when it made reference to the lack of DNA evidence.

**Affirmed.**

13