*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1917**

State of Minnesota,
Respondent,

vs.

Brandon Allen Anderson,
Appellant

**Filed November 16, 2015
Affirmed in part and reversed in part
Worke, Judge**

Chisago County District Court
File No. 13-CR-13-479

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Janet Reiter, Chisago County Attorney, David W. Hemming, Assistant County Attorney, Center City, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Halbrooks, Judge; and Worke, Judge.

## UNPUBLISHED OPINION

**WORKE**, Judge

Appellant challenges his convictions of domestic assault and violation of a domestic abuse no contact order (DANCO), arguing that the prosecutor committed

misconduct during closing argument by arguing a fact not in evidence, the evidence fails to show that he knowingly violated the DANCO, and the district court failed to make findings on an element of the DANCO-violation offense. We affirm appellant's domestic-assault conviction, but because the prosecutor committed prejudicial misconduct and the evidence fails to support the DANCO-violation conviction, we reverse appellant's DANCO-violation conviction.

## FACTS

On June 19, 2013, police officers were dispatched on a report of a domestic assault. C.Z. reported that appellant Brandon Allen Anderson, her boyfriend, smashed her cell phone, pushed her, and stomped on her foot. She also reported that there was an active DANCO that prohibited Anderson from having contact with her absent the presence of an adult third party. Anderson was charged with felony domestic assault (bodily harm), felony domestic assault (intent to cause fear), and violation of a DANCO.

At Anderson's court trial, C.Z.'s testimony was inconsistent with her prior statements. The district court heard C.Z.'s 911 call, in which she stated that Anderson smashed her phone and hit her. The 911 operator testified that C.Z. sounded "[v]ery scared[,] . . . was crying [and] needed some assistance immediately." The district court also received a transcript of C.Z.'s statement to the responding officer, Deputy Rick Lonetti. C.Z. told Deputy Lonetti that she was at Anderson's home, but he got upset and left. She asked Anderson if he was coming back, but he told her to stop texting him. When he returned, C.Z. asked Anderson if he was coming to sleep in the bedroom. Anderson entered the bedroom, ripped C.Z.'s phone out of her hand, smashed the phone

on a dresser next to C.Z.'s face, pushed her on the bed, screamed at her, and stomped on her foot. C.Z. stated that she was so scared of Anderson that she wet her pants. Deputy Lonetti testified that C.Z. was "hysterical," "crying," and "very upset" during the interview.

But C.Z. testified at trial that on June 19, she and Anderson argued and she "was really terrible to him." C.Z. did not recall telling Deputy Lonetti that Anderson ripped her phone out of her hand and smashed it and claimed that Anderson did not do that. Initially, she also denied that Anderson pushed her. After the district court gave the prosecutor permission to treat C.Z. as a hostile witness, she agreed that Anderson pushed her on the bed, screamed at her, and smashed her phone on the nightstand next to her face. But she denied that Anderson stomped on her foot. C.Z. stated that she was not scared of Anderson and called 911 only because she was upset. She also claimed that D.C. was present on the night of the incident. C.Z. admitted that she did not want to testify and was there only because she was subpoenaed. C.Z. did not want Anderson to be convicted because they share a young daughter who would not be able to see him, he could lose his job, and C.Z. would lose his financial support.

A transcript of Investigator Phillip Johnson's in-custody interview with Anderson was received by the district court. Anderson stated that he and C.Z. had been trying to get the DANCO dropped. He stated that on the night in question his roommate, D.C., was home. Anderson stated that he arrived home at 4:00 p.m. and C.Z. was at his house. Anderson and C.Z. argued, and he removed himself from the situation. When he returned home, Anderson decided to sleep on the couch because C.Z. was in the bedroom. C.Z.

3

sent Anderson text messages throughout the night. He initially ignored the messages, but eventually went into the bedroom and told her to leave. Anderson admitted to taking C.Z.'s phone, but denied smashing it, claiming that it had been cracked for weeks.

D.C. testified that on June 19, 2013, he was at work during his normal hours, which were 7:30 a.m. to 4:00 p.m. D.C. was aware of the DANCO, but could not recall if there was any time on June 19 when C.Z. and Anderson were alone in the house. D.C. testified that he heard C.Z. and Anderson arguing on June 19, but he did not hear anything that indicated he should intervene.

The district court found Anderson not guilty of felony domestic assault involving bodily harm, but found him guilty of felony domestic assault involving intent to cause fear and of violating a DANCO. This appeal follows.

## D E C I S I O N

### Prosecutorial misconduct

Anderson first argues that the prosecutor committed prejudicial misconduct in her written closing argument by misstating the evidence. She stated that it was impossible for D.C. to have been at the residence with C.Z. and Anderson because he logistically worked too far away to have present during the altercation, but she referred to an incorrect city of employment. Anderson did not object to the prosecutor's closing argument. This court reviews unobjected-to prosecutorial misconduct under a modified plain-error standard. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). The appellant must first establish that the prosecutor committed error that is plain. *Id.* "A prosecutor commits misconduct by intentionally misstating evidence," *State v. Mayhorn*, 720

4

N.W.2d 776, 788 (Minn. 2006), and by basing a closing argument on facts not in evidence. *State v. Stofflet*, 281 N.W.2d 494, 497 (Minn. 1979).

The prosecutor in this case argued:

> [D.C.] testified that on the date of the assault, he was employed by a business located in the city of Wyoming. [D.C.] also testified that he worked . . . from 7:30 a.m. to 4:00 p.m. . . . The City of Wyoming is located approximately 25 miles from Rush City. Even assuming that [D.C.] left his place of employment at exactly 4:00 p.m. and drove directly to his home in Rush City, it is not physically possible that [D.C.] made it home prior to, or at, 4:00 p.m. on the date of the assault. Therefore, based on the statements of [Anderson and D.C.], there was at least a short period of time in which [Anderson] and [C.Z.] were alone at the Rush City residence.

In her rebuttal, the prosecutor reiterated: "[D.C.] testified that he was working in Wyoming, 25 miles south of Rush City, from 7:30 a.m. to 4 p.m. . . . [Anderson stated] . . . that he arrived home at 4 p.m. on the day of the assault and [C.Z.] was already present in the home." Finally, the prosecutor stated that "the [c]ourt must recognize that there is no possible way that [D.C.] was present in the home precisely at 4 p.m. when [Anderson] returned home."

But, contrary to the prosecutor's argument, D.C. testified that on June 19, 2013, he was employed elsewhere, and worked his normal hours of 7:30 a.m. to 4:00 p.m. D.C. did not testify that "he was employed by a business located in the city of Wyoming" or that he "was working in Wyoming, 25 miles south of Rush City." The prosecutor thus committed misconduct when she based her closing argument on facts not in evidence.

*See id.* Anderson established that the prosecutor committed an error that is plain.[1] *See Ramey*, 721 N.W.2d at 302 (stating that an error is plain if it "contravenes case law, a rule, or a standard of conduct"); *Stofflet*, 281 N.W.2d at 497 ("The rule is that a prosecutor should not base [her] argument on facts not in evidence.").

Because Anderson met his burden of showing plain error, the state must show that the misconduct did not affect Anderson's substantial rights. *See Ramey*, 721 N.W.2d at 302; *see also State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998) (stating that an error does not affect substantial rights if it did not affect the outcome of the case). Anderson asserts that absent the prosecutor's misstatement, "there is a reasonable likelihood that the court would have found Anderson not guilty of violating the DANCO because [C.Z.] and Anderson testified that [D.C.] was home at all relevant times, and there was no other evidence to contradict this testimony." The state argues that it is irrelevant where D.C. works because the record shows that there is some amount of time when Anderson and C.Z. were together without D.C.[2]

Because the district court relied on the prosecutor's misstatement of the evidence in concluding that Anderson violated the DANCO, we conclude that Anderson's substantial rights were affected. For example, the district court's findings of fact state

---

[1] The state concedes that the prosecutor erred and that this court "could find this to be an error that was plain."

[2] Anderson's argument that the prosecutor's misstatement affected Anderson's substantial rights appears limited to the DANCO violation and does not explain how the misstatement affected Anderson's substantial rights with respect to the assault charge. We therefore limit our analysis to the DANCO. *See McKenzie v. State*, 583 N.W.2d 744, 746 n.1 (Minn. 1998) (applying the rule that arguments not briefed are forfeited in a case where appellant "allude[d] to" an issue but "fail[ed] to address [it] in the argument portion of his brief").

that D.C. testified that he lived with Anderson in Rush City and worked on the day of the incident from 7:30 a.m. to 4:00 p.m. in Wyoming, MN. The court relied on this finding to conclude that Anderson violated the term of the DANCO that required a third party be present during contact between Anderson and C.Z.

> [D.C.] testified that he worked every day that week from 7:00 a.m. [sic] to 4:00 p.m. in Wyoming, MN. [Anderson] told Investigator Johnson that he arrived home at 4:00 p.m. on June 19, 2013 and [C.Z.] was already at his residence. Thus, [Anderson] and [C.Z.] were unsupervised in violation of the DANCO on June 19, 2013 from 4:00 p.m. until [D.C.] returned home from work.

Having concluded that the prosecutorial misconduct affected Anderson's substantial rights, we would ordinarily be required to consider the fourth prong of the plain-error test: "whether a new trial is required to ensure the fairness, integrity, and public reputation of judicial proceedings." *State v. Watkins*, 840 N.W.2d 21, 31 (Minn. 2013). But given our conclusion that the state failed to prove that Anderson knowingly violated the DANCO, the evidence is insufficient to support the conviction, and it is unnecessary to address the fourth prong. *See State v. Bustos*, 861 N.W.2d 655, 662 (Minn. 2015) (concluding it was plain error to restrict defense counsel's closing argument, but noting it was unnecessary to address whether the error affected substantial rights because the combined effect of this error and another error required a new trial).

### *Sufficiency of the evidence*

Anderson also challenges the sufficiency of the evidence to support his convictions of domestic assault and violation of a DANCO. When addressing a sufficiency-of-the-evidence challenge, this court's review is limited to determining

7

whether the evidence was sufficient to permit the fact-finder to reach its verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989).

Anderson first argues that the state failed to establish that he "knowingly" violated the DANCO.[3] The elements of the DANCO-violation offense require proof that there was a DANCO, Anderson knew about the DANCO, and Anderson knowingly violated the DANCO. Minn. Stat. § 629.75, subd. 2(b), 2(d)(1) (2012).[4]

As a state of mind, knowledge "generally is proved circumstantially, by inference from words and acts of the actor both before and after the incident." *State v. Johnson*, 616 N.W.2d 720, 726 (Minn. 2000). "A conviction based on circumstantial evidence . . . warrants heightened scrutiny" compared to a conviction based on direct evidence. *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010). Because of the heightened scrutiny, this court examines "whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *State v. Silvernail*, 831 N.W.2d 594, 599 (Minn. 2013) (quotation omitted). "Circumstantial evidence must form a complete chain that, as a whole, leads so directly to the guilt of the defendant as to

---

[3] Anderson's final claim of error on appeal is that his DANCO-violation conviction should be reversed and remanded for a new trial because the district court failed to make findings that Anderson knowingly violated the DANCO statute. *See Watkins*, 840 N.W.2d at 31 (reversing and remanding for new trial, after considering plain-error test, where the jury instructions omitted the "knowingly" element). Because we conclude that the evidence is insufficient to establish the "knowingly" element of the offense, it is unnecessary to address this issue.

[4] This offense occurred in June 2013, before the Minnesota Legislature amended the statute to omit the "knowingly" element. 2013 Minn. Laws ch. 47, §§ 5, 6, at 207-208. Under current law, the state is not required to prove that the offender knowingly violated a DANCO. Minn. Stat. § 629.75, subd. 2(c), (d) (2014).

8

exclude beyond a reasonable doubt any reasonable inference other than guilt." *State v. Hanson*, 800 N.W.2d 618, 622 (Minn. 2011).

The circumstances proved show that there was an active DANCO that provided that Anderson could have contact with C.Z. only in the presence of a third party. Anderson knew of the order, stating that he and C.Z. were trying to get the DANCO dropped. C.Z. testified that D.C. was present at the home on the night of the incident. And D.C. testified that although he was at work until 4:00, he could not recall if there was any time on June 19 when C.Z. and Anderson were alone at the residence, but he remembered hearing them argue.[5]

The circumstances proved establish the first two elements of the offense—proof that there was a DANCO and that Anderson knew about the DANCO. *See* Minn. Stat. § 629.75, subd. 2(b). But the district court did not make any findings that Anderson knowingly violated the DANCO. And the circumstances proved are consistent with C.Z.'s testimony that D.C. was home at the time, and Anderson's statement to an investigator that he did not knowingly violate the DANCO because a third party was present. We therefore conclude that the evidence is insufficient to sustain Anderson's conviction for violating the DANCO.

Anderson also argues that the evidence was insufficient to sustain his domestic-assault conviction because of C.Z.'s shifting statements about what happened that night.

---

[5] Because the prosecutor misstated the evidence regarding the location of D.C.'s work, we do not consider the district court's finding that D.C. could not have been home at the time of the argument.

A person is guilty of domestic assault when he "commits an act with intent to cause fear in another of immediate bodily harm or death." Minn. Stat. § 609.2242, subd. 1(1) (2012). Anderson appears to argue that his assault conviction must be reversed because C.Z. was an unreliable witness, and her testimony was not corroborated. Although C.Z.'s trial testimony contradicted her statement to the deputy, Anderson ignores the fact that the district court could consider C.Z.'s out-of-court statements to the deputy and the 911 operator as substantive evidence. *See* Minn. R. Evid. 803(2) ("A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.").

The district court's findings of fact rely on the 911 operator's testimony that C.Z. was very scared, crying, and difficult to understand, as well as the 911 recording in which C.Z. said that, "he's never going to stop doing this to me," and Anderson "smashed [her] phone." The district court also relied on Deputy Lonetti's testimony that C.Z. was "hysterical and crying," and C.Z.'s statements to Deputy Lonetti shortly after the incident that Anderson smashed her phone on the dresser next to her face, pushed her on the bed while screaming, and that she was scared for herself and her daughter.

Although C.Z. testified that she was not scared of Anderson and called 911 only because she was upset, she also admitted that she did not want to testify and only did so because she was subpoenaed. C.Z. did not want Anderson to go to jail because their daughter would not be able to see him, he could lose his job, and C.Z. would lose his financial support. The district court's findings of fact reflect that it did not rely on C.Z.'s inconsistent trial testimony in finding Anderson guilty. *See State v. Johnson*, 568

10

N.W.2d 426, 436 (Minn. 1997) (stating that the fact-finder is "free to accept part and reject part of a witness' testimony") (quotation omitted).  C.Z.'s statements to the deputy are sufficient to support Anderson's domestic-assault conviction for committing an act with intent to cause fear of immediate bodily harm.

We affirm Anderson's domestic-assault conviction, but given the prosecutor's misconduct in misstating evidence relevant to Anderson's DANCO-violation conviction, we conclude that the evidence does not sufficiently support this conviction.  We therefore reverse Anderson's DANCO-violation conviction.

**Affirmed in part and reversed in part.**