# IN THE COURT OF APPEALS OF IOWA

No. 19-1788
Filed February 3, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**AMANDO MONTEALVO,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Chris Foy, Judge.

Amando Montealvo appeals his conviction for sexual abuse in the second degree. **AFFIRMED.**

Benjamin D. Bergmann and Alexander Smith of Parrish Kruidenier Dunn Gentry Brown Bergmann & Messamer L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee.

Heard by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

Amando Montealvo appeals his conviction for sexual abuse in the second degree. He argues his trial was tainted by juror misconduct and juror bias, an expert witness improperly commented on witness testimony, the court erroneously admitted vouching evidence, the evidence is insufficient to support his conviction, the weight of the evidence does not support his conviction, and cumulative errors require a new trial. We reject his arguments and affirm his conviction.

### I. Background Facts and Proceedings.

A.P. was born in 1995. Growing up, she lived in a home in Cerro Gordo County with her mother and two siblings. Montealvo lived with them in the home "off and on" throughout her childhood. A.P. testified Montealvo wanted her to give him "romantic" kisses on the lips beginning at age four and more frequently after she turned six. A.P. further testified she saw Montealvo kiss her younger sister in the same way.

A.P. testified that when she was seven years old she stayed home from school one day with an illness. A.P. and Montealvo were the only persons in the home that day. A.P. fell asleep in her bedroom and woke to find Montealvo in bed with her. Montealvo's hand was on A.P.'s vagina over her clothes, and he was trying to kiss her. A.P. managed to push Montealvo away, and she went to her grandparents' nearby home to avoid him.

A.P. testified to another incident when she was ten years old. A.P. had just returned home from school and sat down on the living room couch to watch television. A.P. was alone in the room until Montealvo entered the room and sat on the couch uncomfortably close to her. A.P. moved to a chair to avoid

Montealvo, but he moved to the chair with her. A.P. moved to the floor to avoid Montealvo again. Montealvo moved to the floor next to A.P. and began kissing her on the lips. Montealvo then touched A.P. on the vagina under her clothes, penetrated her vagina with his fingers, and attempted to remove her pants. A.P. hit Montealvo to escape and went to her grandparents' home.

In 2015, A.P.'s sister, who was a minor at the time, reported to a counselor that Montealvo inappropriately touched her about nine years earlier. The sister's disclosure prompted a police investigation, and A.P. reported Montealvo touched her when she was seven and ten as part of that investigation.

The State filed criminal charges against Montealvo stemming from the allegations by A.P. and her sister. Trial was held July 16 to 19, 2019, after which the jury found Montealvo guilty of sexual abuse in the second degree for his actions with A.P.[1] Montealvo filed post-trial motions seeking a new trial on multiple grounds, including weight of the evidence and juror misconduct and bias. After a hearing, the district court denied Montealvo's motions and sentenced him to a term of incarceration not to exceed twenty-five years. Montealvo appeals.

II. **Standard of Review.**

We generally review the district court's denial of a motion for new trial for abuse of discretion. *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016). However, we review constitutional issues de novo, including constitutional issues raised in a motion for new trial.[2] *State v. Christensen*, 929 N.W.2d 646, 676 (Iowa 2019); *see*

---

[1] The jury also found Montealvo not guilty of a second count, assault with intent to commit sexual abuse for his actions with A.P.'s sister.

[2] The State asserts Montealvo only preserved for our review claims of juror misconduct and juror bias that are based on Iowa's rules of criminal procedure and

*also State v. Webster*, 865 N.W.2d 223, 231 (Iowa 2015). We review evidentiary rulings, including claims that a witness is impermissibly vouching for another witness's credibility, for abuse of discretion. *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014). We review a claim of insubstantial evidence for correction of errors at law. *State v. Schiebout*, 944 N.W.2d 666, 670 (Iowa 2020).

### III.     Juror Misconduct and Juror Bias.

Montealvo sought a new trial on the grounds of juror misconduct and juror bias, asserting a juror "lied" about her experience with sexual abuse during voir dire. "The concepts of juror misconduct and juror bias are often related but are somewhat different in nature." *Christensen*, 929 N.W.2d at 661. "Juror misconduct ordinarily relates to actions of a juror, often contrary to the court's instructions or admonitions, which impair the integrity of the fact-finding process at trial." *State v. Webster*, 865 N.W.2d 223, 232 (Iowa 2015). "Juror bias, on the other hand, focuses on the ability of a juror to impartially consider questions raised at trial." *Id.* "A biased juror is simply unable to come to a fair decision in a case based upon the facts and law presented at trial." *Id.*

Early in voir dire, the district court addressed the prospective jurors:

I mentioned earlier the charges against Mr. Montealvo are sex offenses. And I want to be careful here because I don't want to pry,

---

not the federal or state constitutions. Thus, the State asserts, the proper standard of review for Montealvo's non-constitutional claims of juror misconduct and juror bias is abuse of discretion. Our supreme court has recognized the rules implicated in a claim of juror misconduct or juror bias "are designed to implement the constitutional demands of due process." *Christensen*, 929 N.W.2d at 677. Our supreme court has so far declined to specify the standard of review for a claim of juror misconduct or juror bias that is based entirely on the rules of criminal procedure. *Id.* at 677–78. As in *Christensen*, "we generally agree with the fact-finding of the district court" and our outcome is the same when reviewing the district court de novo or for abuse of discretion. *Id.*

but I think it's helpful to have this background about prospective jurors.

Anyone that's seated up front right now that either has been a victim themselves of a sex—a sex offense or is close friends or has a close family member who has been a victim?

Multiple prospective jurors raised their hands, and the court solicited general details from these persons in open court before questioning them privately with both parties' counsel. Juror H did not raise her hand or otherwise provide information about personal experience with sex offenses. Juror H eventually sat on the jury and participated in rendering the verdict.

After trial, Montealvo learned Juror H may have been the victim of a sex offense. Montealvo presented testimony from Juror H's older sister, who described two incidents occurring more than fifty years earlier.[3] According to the testimony of Juror H's sister, when Juror H was "[m]aybe four" years old, the sister watched their father touch Juror H on the buttocks and the sister on the vagina after they finished a bath. In a later incident described by the sister, when Juror H was about six years old, Juror H told the sister their uncle had just made Juror H fondle him. According to the sister's testimony, when the sister learned Juror H was a juror for Montealvo's trial, the sister asked Juror H, "How can you be a juror when you have been sexually abused?" Juror H replied that "she's over it."

We agree with the district court that the testimony of Juror H's sister is not sufficient to establish Juror H lied during voir dire. As the district court found, "what a four- to six-year old might have said about the incident, how a six- to eight-year-old sister interpreted what was being told about the incident" does not establish

---

[3] Juror H's sister testified she is currently sixty-two years old and Juror H is fifty-nine years old.

the two incidents occurred as the sister described. Even if we assume Juror H's sister credibly and accurately described these two childhood incidents from over a half-century ago, nothing in the record shows Juror H still perceived these incidents the same way or even remembered these incidents when the district court asked about sex offenses. Furthermore, nothing in the record shows Juror H perceived either incident as a "sex offense" or herself or her sister a "victim," especially considering no one defined these terms during voir dire. *See State v. Beer*, 367 N.W.2d 532, 535 (Minn. 1985) (finding a juror did not "lie" during jury selection in a sex abuse case by not responding affirmatively to questions about being a victim or perpetrator based on the wording of the questions and the lack of explanation of the terms used in the questions). Without establishing Juror H lied during voir dire or otherwise refused to answer questions honestly, Montealvo cannot show Juror H engaged in juror misconduct.

As to juror bias, "deliberate lying during voir dire may strongly suggest" bias requiring a new trial. *Webster*, 865 N.W.2d at 237. However, as explained above, the record does not establish Juror H deliberately lied during voir dire. Juror H's later statement that "she's over" the earlier incidents is ambiguous and does not show she was unable to fairly evaluate the charges against Montealvo. *See id.* at 232. We agree with the district court that Montealvo failed to establish Juror H was impermissibly biased. We reject his claims of juror misconduct and juror bias.

### IV. Vouching.

Montealvo argues the State's expert witness impermissibly vouched for A.P.'s credibility. "Expert testimony in child sexual abuse cases can be very beneficial to assist the jury in understanding some of the seemingly unusual

behavior child victims tend to display." *Dudley*, 856 N.W.2d at 675. However, "an expert witness cannot give testimony that directly or indirectly comments on the child's credibility." *Id.* at 677.

The State called Tammera Bibbins, a therapist and forensic interviewer for children, as an expert witness. Bibbins discussed multiple topics, including "delayed reporting" or "delayed disclosure," which she described as occurring when "someone says they experienced abuse but they don't report that the abuse happened until much, much later." Montealvo claims vouching occurred during this questioning from the State: "Q. Based on your training and experience, how common is delayed reporting? A. Very common. Q Do you see it happen more than it doesn't? A. I would agree with that statement, yes."

Montealvo specifically asserts Bibbins's statement that delayed reporting is "common" impermissibly commented on A.P.'s credibility and her report that Montealvo abused her more than one decade earlier. However, Bibbins later testified reporting even one week after the abuse can be considered delayed. Her testimony makes clear that delayed reporting in general is "common," not just reporting several years after the abuse as with A.P. Furthermore, she explicitly denied that delayed reporting bolsters a claim and she acknowledged delayed reporting can happen in both bona fide sex abuse cases and false sex abuse cases. We find Bibbins was not directly or indirectly commenting on A.P.'s credibility, and we find no abuse of discretion in allowing Bibbins's testimony. *See State v. Leedom*, 938 N.W.2d 177, 192–93 (Iowa 2020) (finding no impermissible vouching when expert's testimony is general in nature, the expert has not treated the alleged victim, the expert does not refer to the alleged victim in any way, the

expert does not offer opinions regarding the alleged victim's truthfulness, the expert does not specifically testify that the alleged victim's behavior was consistent with the behavior of abuse victims generally, and the expert did not connect the alleged victim's experience to the research described in the expert's testimony).

## V.    Sufficient Evidence.

Montealvo argues the evidence is insufficient to support his conviction for sexual abuse in the second degree. Iowa Code § 709.3(2) (2005) (stating sexual abuse in the second degree occurs when a person commits sexual abuse on a person under the age of twelve). "Substantial evidence exists to support a verdict when the record reveals evidence that a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *State v. Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004). "In making this determination, '[w]e view the evidence in the light most favorable to the verdict,' including all reasonable inferences that may be deduced from the record." *Id.* (alteration in original) (quoting *State v. Gay*, 526 N.W.2d 294, 295 (Iowa 1995)).

Montealvo notes the only evidence of his guilt is A.P.'s testimony, and he raises several issues that he claims cast doubt on her credibility. However, questions of credibility are for the factfinder. *See State v. Laffey*, 600 N.W.2d 57, 59 (Iowa 1999) ("[I]t is for the [factfinder] to judge the credibility of the witnesses and weigh the evidence."). The jury impliedly found A.P. credible in convicting Montealvo. Furthermore, "the alleged victim's testimony is by itself sufficient to constitute substantial evidence of defendant's guilt" of sexual abuse. *State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998). A.P. clearly testified that Montealvo committed sexual abuse when he touched and penetrated her vagina with his hand

and finger when she was under the age of twelve. *See* Iowa Code §§ 709.17 (defining sex act to include "contact between the finger or hand of one person and the genitalia or anus of another person"), 709.1(3) (defining sexual abuse to include performing a sex act on a child). In light of A.P.'s testimony, we find the evidence sufficient to support Montealvo's conviction.

## VI. Weight of the Evidence.

Montealvo argues the district court abused its discretion in denying his motion for new trial on weight-of-the-evidence grounds. "The weight-of-the-evidence standard requires the district court to consider whether more 'credible evidence' supports the verdict rendered than supports the alternative verdict." *Ary*, 877 N.W.2d at 706. "The question for the court is not whether there was sufficient credible evidence to support the verdict rendered or an alternative verdict, but whether 'a greater amount of credible evidence' suggests the verdict rendered was a miscarriage of justice." *Id.* (quoting *State v. Ellis*, 578 N.W.2d 655, 658–59 (Iowa 1998)). Also, with a new trial motion based on a weight-of-the-evidence claim, "appellate review is limited to a review of the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003).

In making his weight-of-the-evidence argument, Montealvo again attacks A.P.'s credibility. However, the district court found A.P. "particularly persuasive," noting "she acknowledged where there were inconsistencies with other statements she had given" and "admitted that she had done her best to try to block out the abuse by Mr. Montealvo from her memory." The court also noted the jury was aware of any inconsistencies in A.P.'s testimony and made its own credibility

determination. We find no abuse of discretion in the court's decision that the weight of the evidence supports Montealvo's conviction.

## VII. Cumulative Error.

Finally, Montealvo argues the cumulative effect of errors in his case denied him a fair trial. Because we find no individual errors, there is no cumulative error. *See State v. Atwood*, 602 N.W.2d 775, 785 (Iowa 1999); *State v. Burkett*, 357 N.W.2d 632, 638 (Iowa 1984).

## VIII. Conclusion.

We agree with the district court that Montealvo did not establish juror misconduct or juror bias. We further find the court did not abuse its discretion in admitting the expert witness testimony or denying Montealvo's weight-of-the-evidence claim, the evidence is sufficient to support Montealvo's conviction, and no cumulative error occurred. Therefore, we affirm Montealvo's conviction.

**AFFIRMED.**